Linda LaChance McRitchie
BIRBECK, et al.

v.

SOUTHERN NEW ENGLAND
PRODUCTION CREDIT
ASSOCIATION, et al.

Civ. No. H-84-593.

United States District Court,
D. Connecticut.

March 29, 1985.

George Tillinghast, Jr., Sherwood, Tillinghast & Scalise, Glastonbury, Conn., Walter Twachtman, Jr., West Hartford, Conn., for plaintiffs.

Ira H. Goldman, Robert J. Cathcart, Thomas M. Bounty, Theodore M. Space, Shipman & Goodwin, Hartford, Conn., for defendants.

## RULING ON DEFENDANTS' MOTION TO DISMISS FOR LACK OF SUBJECT MATTER JURISDICTION

BLUMENFELD, Senior District Judge.

### Facts

Plaintiffs' complaint arises as a result of a Settlement Agreement executed by the plaintiffs and the defendants on January 29, 1983. By the express terms of that Agreement, plaintiffs agreed to transfer to defendant Southern New England Production Credit Association ("SNEPCA") real estate and personal property located in Connecticut and Maine. This transfer was made in lieu of foreclosure, by SNEPCA, of a mortgage and other security instruments securing delinquent loans made by SNEPCA to the plaintiffs. The transfer to SNEPCA was made subject to prior security instruments in favor of defendant Federal Land Bank of Springfield ("FLBS") securing additional loans from FLBS to the plaintiffs. As is set forth in the Settlement Agreement, in exchange for plaintiffs' conveyance of their property, the defendants agreed, *inter alia*, to release the plaintiffs from virtually all deficiency judgment liability on the loans described in the Agreement.

The plaintiffs claim that prior to January 29, 1983, during negotiations between plaintiffs and defendants, the defendants represented to the plaintiffs that the fair market value of the plaintiffs' properties was equal to the indebtedness of the plaintiffs to the defendants as represented by certain notes, mortgages, guarantees, and security agreements that had been executed by the plaintiffs in connection with loan agreements made between the plaintiffs and the respective defendants in January 1980 and May 1982.

While the defendants point to extensive recitations in the Settlement Agreement concerning the arms-length nature of the parties' agreement and their understanding of its terms, the plaintiffs stress that the defendants, and the officers, directors, and employees thereof, occupied positions of faith, trust, and confidence in their relationship with the plaintiffs, and further that the plaintiffs placed explicit faith, trust, and confidence in the representations made by the defendants in reliance upon this fiduciary and confidential relationship and the superior knowledge of the defendants. Complaint, at ¶ 24. It is noteworthy that plaintiff Birbeck and the Levesques were represented by counsel in connection with the transaction. The plaintiff Tatoian is himself an attorney and acted on behalf of the corporate plaintiffs in the transaction, and the plaintiff Thomas J. LaChance chose not to be represented.

Following the execution of the Settlement Agreement and the carrying out of its terms in January and early February of 1983, the defendant SNEPCA was able to find buyers for all of the real estate and personal property by March 21, 1983. The

net proceeds received by SNEPCA in exchange for the real estate and personal property that was the subject of the Settlement Agreement exceeded the approximately $3,150,000 indebtedness of the plaintiffs which was released by the terms of the Settlement Agreement by approximately $605,000, or 19% of the total debt.

The complaint seeks to set aside or reform the Settlement Agreement entered into by the parties on January 29, 1983, and to obtain for the plaintiffs either a return of the property transferred to SNEPCA or payment of the excess amount received by the defendants on resale of the property conveyed to SNEPCA, together with other damages. Six grounds are alleged to justify the relief sought in counts claiming the following:

(1) Fraud, misrepresentation and/or a reckless disregard for the truth on the part of the defendants in the course of negotiations of the terms of the Settlement Agreement with the plaintiffs;

(2) Mutual mistake in the negotiation of the agreement;

(3) Taking of plaintiffs' property by FLBS and SNEPCA without just compensation in an abuse of discretion in violation of the Fifth Amendment;

(4) Breach of an alleged fiduciary relationship between the plaintiffs and the defendants;

(5) Unjust enrichment of the defendants at the expense of the plaintiffs; and

(6) That the agreement is "unconscionable, unfair and oppressive," and therefore should be rescinded.

In response to the plaintiffs' complaint, the defendants have moved pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure to dismiss the complaint on the ground that this court lacks subject matter jurisdiction over the causes of action alleged. The defendants submit that the plaintiffs' allegations at most constitute state law claims which require them to proceed, if at all, in state court.

## Discussion

The question of jurisdiction having been raised by the defendants, it now must be determined whether subject matter jurisdiction properly lies here. If this court lacks subject matter jurisdiction over this action, it will be dismissed. The plaintiffs' allegations of federal jurisdiction in their complaint are the natural points of departure in making the necessary determination.

The first three paragraphs of the complaint allege federal jurisdiction on several bases as follows:

(1) The complaint claims that plaintiffs' rights under the fifth amendment to the United States Constitution have been violated (Complaint, ¶¶ 1, 3). Jurisdiction for these claims is alleged under 28 U.S.C. § 1331.

(2) The complaint claims that its allegations show a violation of the Farm Credit Act of 1933, as amended in 1971, 12 U.S.C. § 2001 *et seq.*, which governs the operation of entities such as SNEPCA and FLBS (Complaint ¶¶ 1 and 158(F)). Jurisdiction for these claims is alleged under 28 U.S.C. § 1331.

(3) The plaintiffs invoke the jurisdiction of this court in counts four and six alleging breach of contract. They generally claim jurisdiction under 28 U.S.C. § 1331 (Complaint ¶ 3). These claims will be treated as allegations of jurisdiction for causes of action which arise under federal common law.

(4) The complaint claims a violation of 42 U.S.C. § 1983, concurrent with a claim to jurisdiction under 28 U.S.C. § 1343 (Complaint ¶ 2).

(5) The plaintiffs generally claim jurisdiction under the *Tucker Act*, 28 U.S.C. § 1346(a)(2) (Complaint, ¶¶ 1, 3).

In order to determine whether this court has subject matter jurisdiction over the causes of action alleged in the complaint, each of the alleged bases of federal jurisdiction will be examined.

## I. *Does This Case "Arise Under" The Constitution of the United States?*

 In paragraphs 1 and 2 of the complaint the plaintiffs allege that this court has jurisdiction under 28 U.S.C. § 1331 because this case "arises under" the fifth amendment to the United States Constitution. A more specific reference to the fifth amendment claim appears in the third count which characterizes the transfers of the plaintiffs' property to the defendants pursuant to the Settlement Agreement as an "appropriation" or "taking" of that property without public necessity, just compensation, or due process of law. Thus the plaintiffs' fifth amendment claim is grounded on the due process clause of the fifth amendment and the doctrine of inverse condemnation.

It is well established that the provisions of the fifth amendment to the Constitution are inhibitions upon the power of government and its agencies rather than upon the freedom of action of private persons. *Public Utilities Commission v. Pollak,* 343 U.S. 451, 461–62, 72 S.Ct. 813, 820, 96 L.Ed. 1068 (1952) (citing other cases). The initial question, therefore, is whether the defendants here, a Federal Land Bank and a Production Credit Association both existing under and by virtue of the Farm Credit Act of 1933, as amended in 1971, 12 U.S.C. § 2001 *et seq.,* and their agents, servants, employees, officers and directors, are to be considered private entities or governmental agencies sufficient to support a cause of action under the federal due process clause

of the fifth amendment. This question has already been resolved by several federal district courts.

In *DeLaigle v. Federal Land Bank of Columbia,* 568 F.Supp. 1432 (S.D.Ga.1983), the court held that the Federal Land Bank of Columbia was a private corporation without sufficient governmental involvement to support a cause of action under the due process clause of the fifth amendment. The court noted that "even though Federal land banks are 'federally chartered instrumentalities of of the United States' pursuant to 12 U.S.C. § 2011 (1976), the Congressional policy behind the Farm Credit Act of 1971, as stated in 12 U.S.C. § 2001, establishes that Congress recognized that the Farm Credit System was to be 'farmer-owned,' rather than owned by the federal government." *Id.* at 1439 (footnotes omitted). Additionally, the court concluded that the admittedly heavy regulation of federal land banks does not transform these entities into governmental agencies. *Id.* See also *Federal Land Bank of Columbia v. Cotton,* 410 F.Supp. 169, 170 (N.D.Ga.1975). *But cf. Schlake v. Beatrice Production Credit Association,* 596 F.2d 278, 280–82 (8th Cir.1979).[1]

It is also important to note that Congress has specifically limited federal court jurisdiction to hear cases based solely on the ground that the action was brought by or against a corporation incorporated by or under an Act of Congress. More specifically, 28 U.S.C. § 1349 provides:

---

1. In *Schlake* the plaintiff claimed that the defendant's alleged reduction of its loan commitment to him was a violation of the fifth amendment. On appeal, the Eighth Circuit Court of Appeals expressed considerable difficulty with the jurisdictional basis for the action, stating that the due process clause of the fifth amendment cannot be said to elevate breach of contract actions into constitutional claims. Nevertheless, the court concluded that "there may be a colorable basis for jurisdiction in this case" (at 281) because of the pervasive involvement of the federal government in the creation and operation of production credit associations, and then proceeded to reject the plaintiff's claim on the merits.

In their memorandum, the defendants point out that the court's opinion in *Schlake* suggests

serious doubt as to its jurisdiction and appears to determine that jurisdiction exists only in order to permit a final resolution of an already fully tried and appealed case without forcing the parties to relitigate it in state court. In contrast the instant litigation is at a point where dismissal will not lead to judicial inefficiency. Here there are no practical reasons, as there might have been in *Schlake,* to extend this court's jurisdictional reach beyond legitimate and supportable boundaries. To the extent that *Schlake* suggests that there is a colorable basis for jurisdiction over a case involving a production credit association simply because of the extent of federal government involvement in the creation and regulation of such entities, I do not agree.

The district courts shall not have jurisdiction of any civil action by or against any corporation upon the ground that it was incorporated by or under an Act of Congress, unless the United States is the owner of more than one-half of its capital stock.

In the instant case the only basis for alleging that the defendants actions are tantamount to governmental action subject to the restrictions of the fifth amendment is the fact that the defendants are incorporated by or under an Act of Congress. Further, there is no dispute here that the United States has no property interest in either SNEPCA or FLBS. SNEPCA is owned by shareholders consisting of its borrowers and is managed by a board of directors elected by those shareholders from their number. All stock in FLBS is owned by 20 federal land bank associations in the First Farm Credit District (New England, New York and New Jersey) all of whose stock is in turn owned by borrowers from FLBS. It is clear, therefore, that if 28 U.S.C. § 1349 is to have any meaning jurisdiction cannot lie with this court.[2] *See DeLaigle v. Federal Land Bank of Columbia*, 568 F.Supp. at 1438–39.

II. *Does This Case "Arise Under" The Farm Credit Act of 1933, as amended in 1971, 12 U.S.C. § 2001 et seq.?*

■ In paragraphs 1 and 3 of the complaint the plaintiffs allege that this court has jurisdiction over this case by reason of 28 U.S.C. § 1331 which states:

The district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States.

For federal question jurisdiction to exist under section 1331, a controverted question

of federal law must form a substantial part of the plaintiff's case, *e.g., Gully v. First Nat'l. Bank*, 299 U.S. 109, 57 S.Ct. 96, 81 L.Ed. 70 (1936). *Cf. Skelly Oil Co. v. Phillips Petroleum Co.*, 339 U.S. 667, 70 S.Ct. 876, 94 L.Ed. 1194 (1950). In *Smith v. Kansas City Title & Trust Co.*, 255 U.S. 180, 41 S.Ct. 243, 65 L.Ed. 577 (1921), the Supreme Court articulated the following general rule:

The general rule is that where it appears from the bill or statement of the plaintiff that the right to relief depends upon the construction or application of the Constitution or laws of the United States, and that such federal claim is not merely colorable, and rests upon a reasonable foundation, the District Court has jurisdiction under this provision.

At an early date, considering the grant of constitutional power to confer jurisdiction upon the federal courts, Chief Justice Marshall said: "A case in law or equity consists of the right of the one party, as well as of the other, and may truly be said to arise under the Constitution or a law of the United States, whenever its correct decision depends on the construction of either," *Cohens v. Virginia*, 6 Wheat. 264, 379 [5 L.Ed. 257]; and again, when "the title or right set up by the party may be defeated by one construction of the Constitution or law of the United States, and sustained by the opposite construction." *Osborn v. Bank of the United States*, 9 Wheat. 738, 822 [6 L.Ed. 204].

*Smith v. Kansas City Title & Trust Co.*, 255 U.S. at 199, 41 S.Ct. at 245.

Federal question jurisdiction, however, does not immediately or necessarily follow upon a plaintiff's mere assertion that the right sued upon arises under the Constitu-

---

**2.** An additional ground for dismissing plaintiffs' inverse condemnation claim under the fifth amendment is that the plaintiffs' allegations fail to meet the requirement that for a claim of constitutional taking to be sustained the responsible agency must be Congressionally authorized to exercise the power of eminent domain. *See Regional Rail Reorganization Act Cases*, 419 U.S. 102, 127 n. 16, 95 S.Ct. 335, 350, 42 L.Ed.2d 320

(1964); *Hooe v. United States*, 218 U.S. 322, 335–36, 31 S.Ct. 85, 89, 54 L.Ed. 1055 (1910). The statutory powers of federal land banks and production credit associations as listed at 12 U.S.C. §§ 2012 and 2093 do not include the power to take private property for public use. Thus, even if there were subject matter jurisdiction over the plaintiff's inverse condemnation claim, such a claim would fail on the merits.

tion or laws of the United States, or that the right sued upon may be either vindicated or defeated depending upon one construction or another of the Constitution or laws of the United States. That would render the "arising under" requirement no requirement at all. What does follow upon such an assertion by a plaintiff is the federal court's implicit power to take jurisdiction in order to decide whether or not it has jurisdiction. *See* Sager, *Foreword: Constitutional Limitations on Congress' Authority to Regulate the Jurisdiction of the Federal Courts,* 95 Harv.L.Rev. 17, 22 (1981) (jurisdiction to decide jurisdiction is a logical necessity in courts of limited jurisdiction) P. Bator, P. Mishkin, D. Shapiro and H. Wechsler, *Hart and Wechsler's The Federal Courts and The Federal System* 836 n. 4 (2d ed., 1981 Supp.) (a federal court always has jurisdiction to decide whether it has jurisdiction and, if not, to take appropriate action). It is that jurisdiction which this court exercises in deciding the present motion.

In plaintiffs' memorandum in opposition to this motion to dismiss, the plaintiffs characterize their complaint as consisting of six counts each of which contains a cause of action grounded upon violations of the Farm Credit Act of 1933, as amended in 1971, 12 U.S.C. § 2001 *et seq.* Thus the question is whether the plaintiffs have

properly alleged a cause of action "arising under" 12 U.S.C. § 2001 *et seq.*

The plaintiffs argue that since there has been pervasive involvement of the federal government in the creation and operation of Production Credit Associations and Federal Land Banks, and since Federal Land Banks and Production Credit Associations are: (1) federal instrumentalities engaged in the performance of what has been described as an "important governmental function"; (2) exempt from federal and state taxation; and (3) submit annual reports to the Farm Credit Administration, this case must arise under 12 U.S.C. § 2001 *et seq.* It is clear, however, that federal jurisdiction cannot be based upon defendants' status as federal instrumentalities. *See* 28 U.S.C. § 1349.[3] Any claim that the defendants had an implied fiduciary obligation to the plaintiffs with regard to the execution of the settlement agreement, based on the federal regulatory framework affecting the operation and creation of the defendant entities rather than on any particular provision of 12 U.S.C. § 2001 *et seq.,* would not "arise under" 12 U.S.C. § 2001 *et seq.* at all. Whether such a claim would arise under the federal common law will be treated later in this opinion.

The specific statutory sections to which the plaintiffs refer as the basis for section 1331 "arising under" jurisdiction are 12 U.S.C. § 2019,[4] 12 U.S.C. § 2033(15),[5] and

---

**3.** In *Federal Land Bank of Columbia v. Cotton,* 410 F.Supp. 169 (N.D.Ga.1975), a federal land bank brought actions in a state court to foreclose mortgages for failure to pay promissory notes and defendant removed to United States District Court. In granting the plaintiff's motion for remand for lack of federal subject matter jurisdiction, the court noted in response to the defendant's claim that "this action arises under the laws of the United States because the plaintiff is a federally-chartered corporation, formed pursuant to ... 12 U.S.C. § 2011 *et seq.,*" that Congress had specifically declared that federally-chartered corporations cannot sue or be sued in federal court *merely because* they are federally chartered, unless the United States owns 51% of the capital stock, 28 U.S.C. § 1349. The court also held that since plaintiff was asserting a state contract right and its complaint did not raise any issue pertaining to the regulatory structure of the Farm Credit System, the action was not within the jurisdiction of the

federal court despite the defendant's contentions that Congress had intended to extend jurisdiction of the federal courts to all legal actions involving federal land banks.

**4.** 12 U.S.C. § 2019 provides:

The Federal land banks may provide technical assistance to borrowers, members, and applicants and may make available to them at their option such financial related services appropriate to their on-farm and aquatic operations as determined to be feasible by the board of directors of each district bank, under regulations of the Farm Credit Administration.

**5.** 12 U.S.C. § 2033(15) provides:

Each Federal land bank association shall be a body corporate and, subject to supervision of the Federal land bank for the district and of the Farm Credit Administration, shall have the power to—

12 U.S.C. § 2097,[6] all of which relate to the defendants' provision of "technical assistance to borrowers, members, and applicants" including financially related services. Plaintiffs also refer to regulations found at 12 C.F.R. § 618.8000–.8020. The plaintiffs argue that, taken together, these statutory provisions and associated regulations specifically created a federal fiduciary obligation on the part of the defendants to the plaintiffs stemming from their relationship with regard to the execution of the Settlement Agreement. Plaintiffs contend that this obligation was breached by virtue of the defendants' stipulation with the plaintiffs in the Agreement regarding fair market value, this stipulation being claimed by the plaintiffs to be an "appraisal service" provided by defendants pursuant to 12 U.S.C. §§ 2019, 2033(15), and 2097, which "appraisal service" violated federal law because it was allegedly done fraudulently, inadequately, or mistakenly.

The question here is whether the statutes and regulations cited by the plaintiffs specifically suggest that Congress intended to create a federal cause of action for damages by a private party against a federal land bank or production credit association for bad advice under "technical assistance" or "financially related services" programs or otherwise based on a theory of breach of "fiduciary obligation." This court concludes that no such cause of action can be found in the cited statutes and regulations.

The terms of 12 U.S.C. §§ 2019, 2033(15), and 2097 providing for the rendering of financially related services by federal land banks and production credit associations are permissive in nature. They authorize and empower. They neither regulate nor prohibit specific acts of production credit associations or federal land banks, nor do they specifically provide for a "fiduciary obligation" of any nature. Furthermore, the regulations cited by the plaintiffs simply set out rules concerning the establishment of programs of technical assistance and financially related services.[7] The regu-

(15) Provide technical assistance to members, borrowers, applicants, and other eligible persons and make available to them, at their option, such financial related services appropriate to their operations as it determines, with Federal land bank approval, are feasible, under regulations of the Farm Credit Administration.

6. 12 U.S.C. § 2097 provides:

Each production credit association may provide technical assistance to borrowers, applicants, and members and may make available to them at their option such financial related services appropriate to their on-farm and aquatic operations as is determined feasible by the board of directors of each district bank, under regulations prescribed by the Farm Credit Administration.

7. The version of 12 C.F.R. § 618.8000–.8020 which existed at the times relevant to the transactions involved in this case read as follows:

§ 618.8000 Authorization.

Banks and associations may provide technical assistance and may make available to borrowers, members, applicants, and other persons eligible to borrow such financially related services appropriate to their onfarm and aquatic operations as are authorized by the district board.

§ 618.8010 District board policies.

District board policies governing the provision of technical assistance and financially related services shall be established within the following general guidelines.

(a) All services shall be optional, and the borrowers, shall be notified that they are not required to accept the service offered in lieu of a similar service offered by others in cases where the service is required as a loan condition.

(b) All costs to users shall be disclosed in a separate and distinct fashion from interest charges.

(c) There should be maximum cooperation among units of the System to assure that competition in offering service programs among various parts of the system is restricted to an absolute minimum. To the extent possible, members of banks and associations within a district should be served by a single financially related service program or at a minimum, common programs should be offered by the banks and associations within a given district.

(d) Bank board approval to offer a financially related service program shall be conditioned on the application of a feasibility determination including the following four criteria:

(1) Need for the service—based on persuasive evidence that membership need for and interest in the proposed service is sufficient to insure that a quality service can be provided at reasonable cost and that similar service is not being provided adequately (cost,

lations require Farm Credit Administration approval of such services and the adoption of policies regarding them. They do not regulate the relationship between the lender and the borrower or in any way suggest the existence of a cause of action as between the borrower and the lender for breach of any supposed "fiduciary obligation" running from the lender to the borrower.[8] Further, since the regulations cited by the plaintiffs do not govern the relationships between federal land banks and production credit associations, and their borrowing and investing members, and since the complaint does not raise any issue pertaining to the regulatory structure of the Farm Credit System, cases such as *Murphy v. Colonial Federal Savings &*

*Loan Ass'n.,* 388 F.2d 609 (2nd Cir.1967) and *Gibson v. First Federal Savings & Loan Ass'n.,* 364 F.Supp. 614 (E.D.Mich. 1973), *aff'd,* 504 F.2d 826 (6th Cir.1974) in which federal jurisdiction were found, are inapposite here. *See Federal Land Bank of Columbia v. Cotton,* 410 F.Supp. 169, 170 (N.D.Ga.1975).

This court concludes that the plaintiffs have failed to point to any federal law which *creates* the cause of action. The relief that plaintiffs seek rests on principles of state contract law. *See McFaddin Express, Inc. v. Adley Corporation,* 240 F.Supp. 791 (D.Conn.), *aff'd,* 346 F.2d 424 (2d Cir.1965), *cert. denied,* 362 U.S. 1026, 86 S.Ct. 643, 15 L.Ed.2d 539 (1966). In

---

quality, availability) by others in the community.

(2) Capacity to render the service—based on the finding that the association has the institutional capacity to render the proposed service in an effective and efficient manner.

(3) Probability of equitable cost recovery—based on a reasonable presumption that the proposed service program will, at the minimum, generate sufficient revenue to cover all direct and indirect costs. In any case, a service program requiring a substantial subsidization from or interference with the lending function shall not be permitted.

(4) Effect on operations of the association—based on an analysis of the implications flowing from the decision to offer or refuse to offer the proposed financially related service.

(e) The bank shall review annually, or more frequently if necessary, the individual association financially related service programs which have been approved by the bank to ascertain that the approval requirements of the programs are being followed. The results of these reviews shall be presented to the bank board. If an association is found not to be in compliance, a probationary period shall be established. Failure to comply within the probationary period shall result in withdrawal of the service.

(f) Such records as are necessary to facilitate the review program required herein shall be maintained by each bank or association involved in providing financially related services.

§ 618.8020 Farm Credit Administration approval.

Each proposed financially related service and technical assistance program and district policy with regard to an individual program shall be subject to the approval of the Farm Credit Administration. District policies governing services approved prior to the issuance of these regulations shall be submitted to the Farm Credit Administration for approval. These approvals shall be based on the determination that legal authority to offer the service exists and System-wide implications of offering the service would be favorable on balance.

Regulations § 618.8000, § 618.8010; and § 618.-8020 have been recently amended and combined into one regulation, § 618.8000. *See* 49 Fed.Reg. 23159–61 (June 5, 1984).

8. *DeLaigle v. Federal Land Bank of Columbia,* 568 F.Supp. 1432 (S.D.Ga.1983) is not to the contrary. In *DeLaigle,* borrowers filed a complaint alleging an unconstitutional violation of their fifth amendment rights to be advised of appropriate loan adjustment procedures for their farm loans. On the borrowers' request for a preliminary injunction to halt the nonjudicial foreclosure of property securing their farm loans, the court held that even though the borrowers might have had the right to be advised of and considered for loan-servicing techniques under the Farm Credit Act, and even though that right might be protected by the fifth amendment, the federal land bank was a private corporation without sufficient governmental involvement to support a cause of action under the federal due process clause.

Since the decision in *DeLaigle* was grounded on the fact that federal land banks are not governmental agencies for purposes of fifth amendment restrictions, anything the court said about the regulations there in question giving rise to a right protected by the fifth amendment was merely dictum. Furthermore, the regulations construed in *DeLaigle* had mandatory language governing the relationship between the parties, whereas there is no such mandatory language to be found in the regulations cited by the plaintiffs here.

none of the cases cited by the plaintiffs did the courts grant jurisdiction without reference to some federal statute or regulation that either created the cause of action or specifically provided for jurisdiction. *Wigand v. Flo-Tek, Inc.*, 609 F.2d 1028 (2d Cir.1979) (jurisdiction was predicated on 28 U.S.C. § 1332, the general diversity statute, as well as sections 12(2) and 17 of the Securities Act of 1933, 15 U.S.C. §§ 77*l* and 77q; section 77*l* specifically created liability and a cause of action); *Caulfield v. United States Department of Agriculture*, 293 F.2d 217 (5th Cir.1961), *cert. dismissed*, 369 U.S. 858, 82 S.Ct. 946, 8 L.Ed.2d 16 (1962) (affirmed lower court holding that federal courts had no jurisdiction of tenant's action to review administrative determination that landlord had not violated Soil Bank Act, 7 U.S.C. §§ 1801–1831, in manner of securing contract, and that judicial review under Soil Bank Act was limited to question of whether contract had been violated as was specifically prohibited by Acreage Reserve Program regulation 485.319); *Schillner v. H. Vaughan Clarke & Co.*, 134 F.2d 875 (2d Cir.1943) (jurisdiction was based on specific provisions of section 12 of Securities Act of 1933, 15 U.S.C. § 77, which created cause of action sued upon). In order to state a claim arising under the Farm Credit Act of 1933, as amended in 1971, 12 U.S.C. § 2001 *et seq.*, the plaintiffs must do more than simply assert that construction of this federal law is critical to the resolution of this case. They must point to some section of the law that supports their cause of action. The only specific statutory sections that they have pointed to, sections 2019, 2033(15), and 2097, simply do not regulate the challenged behavior of the defendants and will not support jurisdiction for the cause of action alleged.

### III. *Does This Case "Arise Under" Federal Common Law?*

In their memorandum in opposition to this motion to dismiss, the plaintiffs argue that whether or not their claims "arise under" any particular federal statutes or regulations their claims do arise under federal common law and thereby permit 28 U.S.C. § 1331 as a basis for federal jurisdiction. While this court will take jurisdiction of claims governed by federal common law under the jurisdictional grant of 28 U.S.C. § 1331, *Clearfield Trust Co. v. United States*, 318 U.S. 363, 63 S.Ct. 573, 87 L.Ed. 838 (1943); *Illinois v. City of Milwaukee*, 406 U.S. 91, 92 S.Ct. 1385, 31 L.Ed.2d 712 (1972), it must first be decided whether or not plaintiffs' claims in this case can properly be described as "arising under" federal common law.

In *Boyster v. Roden*, 628 F.2d 1121 (8th Cir.1980), the Eighth Circuit was faced with the very question presented here. In *Boyster*, the plaintiff-appellants sought damages against the appellees for alleged violations of fiduciary duties under both the laws of the United States and the State of Kansas. The complaint had alleged that Roden, in his capacity as vice chairman of the board of directors of the White River Production Credit Association ("WRPCA"), learned in confidence the details of a proposed sale and purchase of some farm land in respect to which the plaintiffs were seeking a purchase loan from WRPCA, and then conveyed this confidential information to codefendants Hare and Lassiter, who then, pursuant to an agreement with Roden, submitted a higher bid for the farm land and purchased it.

The lower court dismissed the complaint for lack of subject matter jurisdiction. The sole question on appeal was whether the matter in controversy arose under federal common law. The appellant made no contention that the matter in controversy arose under any federal constitutional provision, statute, administrative regulation or treaty, and conceded that at that point there were no federal cases recognizing the existence of federal common law governing fiduciaries in any context whatsoever. However, the appellants nevertheless contended that the court should declare that federal common law governed fiduciaries of federally chartered production credit associations. The Eighth Circuit declined to so declare, concluded that the matter in

controversy did not arise under federal common law, and affirmed the order of the district court dismissing the complaint for lack of subject matter jurisdiction. In rejecting the notion that alleged violations of fiduciary duties by officers of production credit associations arise under federal common law, the court stated:

> We are not persuaded that the substantial federal interest in successful operation of the Farm Credit System will be impaired by application of state law to appellants' claims. Even if the fiduciary law varies somewhat from state to state, no burden to the System is perceived; each production credit association is a separate entity with a local situs, and its business transactions are with farms and ranchers in its locale. Appellants have failed to specifically show any significant conflict between some federal policy or interest and the use of state law, nor have they shown that state law is inadequate to protect their rights. There is no reason to override state law in this suit between private litigants.

*Id.* at 1125 (footnote omitted).

The *Boyster* case is distinctly on point in holding that claims which allege violations of fiduciary relationships like those alleged here arise under state, rather than federal, law, and thus federal jurisdiction does not lie with regard to such claims. While this court is in agreement with the Eighth Circuit on this question, it is important that plaintiffs' arguments that this suit is governed by federal common law be further addressed.

The plaintiffs analogize the activities of the Farm Credit Administration to federal regulation of the interstate shipment of freight and the interstate operation of telephone service, citing *North American Phillips Corp. v. Emery Air Freight Corp.*, 579 F.2d 229 (2d Cir.1978) and *Ivy Broadcasting Co. v. AT & T*, 391 F.2d 486 (2d Cir.1968), where federal jurisdiction was found. The analogy, however, is faulty. In the cases of interstate shipment of freight and operation of telephone service it was clear that Congress had created a broad and comprehensive scheme of legislation and regulation which was intended to occupy the field to the exclusion of state law. *See North American Phillips* and *Ivy Broadcasting, supra.* In contrast, the law concerning resolution of disputes between borrowers and production credit associations was mandatorily relegated to the state courts until 1975. See 12 U.S.C. § 2258.[9]

---

9. In 1971, 12 U.S.C. § 2258 provided as follows:
 Each institution of the System shall for the purposes of jurisdiction be deemed to be a citizen of the State, commonwealth, or District of Columbia in which its principal office is located. No district court of the United States shall have jurisdiction of any action or suit by or against any production credit association upon the ground that it was incorporated under this Act or prior Federal law, or that the United States owns any stock thereof, nor shall any district court of the United States have jurisdiction, by removal or otherwise, of any suit by or against such association except in cases by or against the United States or by or against any officer of the United States or against any person over whom the courts of the State have no jurisdiction, and except in cases by or against any receiver or conservator of any such association appointed in accordance with the provisions of this Act.
 The statute was amended in 1975 specifically for the purpose of allowing production credit associations to utilize federal courts for the enforcement of "preferred ship mortgages" for which, under the maritime law of the United States, exclusive jurisdiction is in the federal district courts.

 Following the 1975 Amendment, section 2258 read:
 Each institution of the System shall for the purposes of jurisdiction be deemed to be a citizen of the State, commonwealth, or District of Columbia in which its principal office is located.
 The section-by-section analysis in House Report No. 92–593 relating to the 1971 version of section 2258 reads as follows:
 Citizenship of institutions of the System and judicial jurisdiction found in existing law is retained. However, an exception to the rule that actions relating to production credit association matters must be brought in State courts is made in those cases over which the State courts have no jurisdiction.
 1971 U.S.Code Cong. & Ad.News 2091, 2118. This statement in the legislative history indicates Congressional intent that the state courts retain complete residuary jurisdiction over matters concerning production credit associations and only those cases in which state courts had

Further, while the need for a common federal policy throughout the United States for the regulation of interstate operation of telephone and transportation services has been made clear by Congress, there has been no analogous need expressed for such preemption in regard to the Farm Credit System. As the court noted in *DeLaigle v. Federal Land Bank of Columbia*, 568 F.Supp. 1432, 1439, the Congressional policy behind the Farm Credit Act of 1971, as stated in 12 U.S.C. § 2001, establishes that Congress recognized that the Farm Credit System was to be "farmer-owned" rather than owned by the federal government.[10] Glaring evidence that Congress did not intend that federal law preempt the field with respect to federal land banks and production credit associations can be found in the 1980 Amendments to the Farm Credit Act, specifically 12 U.S.C. § 2214, which provides that state and other laws shall apply to service corporations organized pursuant to part D of that legislation to the same extent that such laws would apply to the organizing banks already existing under the Farm Credit System that were engaged in the same activity in the same jurisdiction. The necessary implication of section 2214 is that federal law has not preempted the field with respect to banks chartered under the Farm Credit Act and that to some degree, although unspecified in the statute, state law will control their activities.

An overview of the Farm Credit Act of 1971, its associated legislative history, and its subsequent amendments (including the jurisdictional provisions regarding PCAs) indicates that other than in those areas where Congress had specifically legislated and regulated, institutions within the Farm Credit System were meant to be treated as local privately-owned entities, citizens of the states in which their principal offices were located, and subject to state law.

The plaintiffs also place much weight on cases involving federal savings and loan associations, citing *Murphy v. Colonial Federal Savings and Loan Association*, 388 F.2d 609 (2d Cir.1967), *Rettig v. Arlington Heights Federal Savings & Loan Association*, 405 F.Supp. 819 (N.D.Ill.1975), *Gibson v. First Federal Savings and Loan Association*, 347 F.Supp. 560 (E.D.Mich. 1972), and *Beverly Hills Savings and Loan Association v. Federal Home Loan Bank Board*, 371 F.Supp. 306 (C.D.Cal. 1973). Plaintiffs' reliance on these cases is misplaced for several reasons. First, it is clear that federal law has almost completely preempted the regulation and supervision of federal savings and loan associations. *Fidelity Savings & Loan Ass'n. v. DeLaCuesta*, 458 U.S. 141, 102 S.Ct. 3014, 73 L.Ed.2d 664 (1982). The court's opinion in *Rettig, supra*, extensively discusses this proposition:

> Federal savings and loan associations are instrumentalities and agencies of the United States ... created as part of a nationwide network of mutual thrift institutions to provide a safe place for peo-

no jurisdiction could be brought in federal courts. The policy behind the 1975 Amendment is not inconsistent with the original understanding that federal law would not preempt the field. Congress simply wanted all Farm Credit institutions to have the same access to federal district courts. See Pub.L. No. 94–184, 1975 U.S.Code Cong. & Ad.News 2148–2156.

**10.** The statute, entitled "Congressional declaration of policy and objectives," reads as follows:
 (a) It is declared to be the policy of the Congress, recognizing that a prosperous, productive agriculture is essential to a free nation and recognizing the growing need for credit in rural areas, that the farmer-owned cooperative Farm Credit System be designed to accomplish the objective of improving the income and well-being of American farmers

and ranchers by furnishing sound, adequate, and constructive credit and closely related services to them, their cooperatives, and to selected farm-related businesses necessary for efficient farm operations.
 (b) It is the objective of this chapter to continue to encourage farmer- and rancher-borrowers participation in the management, control, and ownership of a permanent system of credit for agriculture which will be responsive to the credit needs of all types of agricultural producers having a basis for credit, and to modernize and improve the authorizations and means for furnishing such credit and credit for housing in rural areas made available through the institutions constituting the Farm Credit System as herein provided.

ple to invest their money and to acquire financing for homes. These federal associations are chartered by the Board in accordance with the HOLA, 12 U.S.C. § 1461 et seq. which authorizes the Board, "under such rules and regulations as it may prescribe, to provide for the organization, incorporation, examination, operation and regulation of [such institutions]." Pursuant to this authority, the Board has promulgated comprehensive rules and regulations, "covering all aspects of every federal savings and loan association from its cradle to its corporate grave." ...

By virtue of the plenary powers vested in the Board by the HOLA, the courts have consistently recognized the congressional intent to have federal law govern the regulation and supervision of federal associations.... The cases are legion which hold that this preemptive delegation of authority to the Board extends to the internal operations of these institutions, precluding any regulation or interference by the states....

....

... The consistency and universality inherent in applying a single federal standard to the federal savings and loan system, whether it be statutory, regulatory or derived from federal common law, is in keeping with the underlying objective of the HOLA, which contemplates a uniform set of policies for federally chartered associations which does not vary with quirks of local law....

Since only the Board may regulate or supervise the internal affairs of the defendant associations precluding any state interference and the fiduciary duties of directors and officers of federal savings and loan associations are matters relating to the internal affairs of the associations, ... only federal law may be applied to questions involving them.... This is true even where the directors' conduct is not specifically proscribed by any specific regulation of the Board. In such a case, the court may rely upon federal common law to fill out the framework of the Board's regulatory scheme.

*Rettig v. Arlington Heights Federal Savings and Loan Association*, 405 F.Supp. at 823–26 (citations omitted). As discussed earlier, the law governing disputes between borrowers and federal land banks and production credit associations has not been similarly preempted. Thus cases relying on federal preemption of the field with respect to federal savings and loan associations are inapposite here.

Further, cases such as *Murphy, Rettig,* and *Gibson* are otherwise distinguishable from the instant case. In *Murphy,* jurisdiction was upheld on a claim involving a breach of fiduciary duties of directors and officers in which the factual situation alleged was expressly governed by specific statutory and regulatory provisions—12 U.S.C. § 1464(a) and 12 C.F.R. § 544.1(4). In addition, the complaint in *Murphy* centered around management's refusal to provide a dissident group with a list of persons eligible to vote for directorships. The case turned on the *internal management* of federal savings and loan associations relating to fair elections and does not support the notion that a federally cognizable fiduciary duty exists as between a production credit association or federal land bank and its delinquent borrower arising out of a deed in lieu of foreclosure transaction. Similarly, the *Rettig* case arose out of an alleged breach of fiduciary duty by the directors and officers of a federal savings and loan association *to the association.* 405 F.Supp. at 822. The broad language of the *Rettig* court invoking federal common law in that case, as in *Murphy,* was in reference to the *internal management practices* of federally chartered associations and ought not to be read as extending to each and every individual transaction between borrowers and lender federal land banks and production credit associations. *Gulf Federal Savings & Loan v. Federal Home Loan Bank Board,* 651 F.2d 259, 266 (5th Cir.1981).

In *Gibson v. First Federal Savings and Loan Association,* federal jurisdiction was found and a cause of action was implied as a result of the defendant association's fail-

ure to follow specifically applicable federal statutes and regulations—12 U.S.C. § 1461 *et seq.*, 13 U.S.C. § 1464, and 11 C.F.R. § 545.6–11. 347 F.Supp. at 561. Plaintiffs here have failed to cite any specific federal statute or regulation governing this case. Finally, plaintiffs' reliance on *Beverly Hills Savings and Loan Association v. Federal Home Loan Bank Board* as a basis for jurisdiction in this case is misplaced since jurisdiction there was specifically grounded on 12 U.S.C. § 1464(d)(1), which is a special statute permitting suit in federal district courts by federal savings and loan associations against the Federal Home Loan Bank Board. In addition, that case, like *Rettig*, involved fiduciary duties of officers and directors owed *to the plaintiff association.* In sum, cases that hold that the internal operations of a federal instrumentality are governed by federal law where federal regulations explicitly address the relevant issues do not support the proposition put forth by plaintiffs here, that a federal instrumentality in wholly private ownership is subject to federal jurisdiction in a case arising out of a private transaction which neither federal statutes nor federal regulations purport to govern.

In any discussion of the applicability of federal common law it is important to be cognizant of the Supreme Court's decision in *Cort v. Ash,* 422 U.S. 66, 95 S.Ct. 2080, 45 L.Ed.2d 26 (1975) where the Court listed several factors relevant to determining whether a private remedy is implicit in a statute not expressly providing one:

> First, is the plaintiff "one of the class for whose *especial* benefit the statute was enacted," *Texas & Pacific R. Co. v. Rigsby,* 241 U.S. 33, 39 [36 S.Ct. 482, 484, 60 L.Ed. 874] (1916) (emphasis supplied)— that is, does the statute create a federal right in favor of the plaintiff? Second, is there any indication of legislative intent, explicit or implicit, either to create such a remedy or to deny one? See, *e.g., National Railroad Passenger Corp. v. National Assn. of Railroad Passengers,* 414 U.S. 453, 458, 460 [94 S.Ct. 690, 693, 694, 38 L.Ed.2d 646] (1974) (*Amtrak*). Third, is it consistent with the underlying

purposes of the legislative scheme to imply such a remedy for the plaintiff? See, *e.g., Amtrak, supra; Securities Investor Protection Corp. v. Barbour,* 421 U.S. 412, 423 [95 S.Ct. 1733, 1740, 44 L.Ed.2d 263] (1975); *Calhoon v. Harvey,* 379 U.S. 134 [85 S.Ct. 292, 13 L.Ed.2d 190] (1964). And finally, is the cause of action one traditionally relegated to state law, in an area basically the concern of the States, so that it would be inappropriate to infer a cause of action based solely on federal law? See *Wheeldin v. Wheeler,* 373 U.S. 647, 652 [83 S.Ct. 1441, 1445, 10 L.Ed.2d 605] (1963); cf. *J.I. Case Co. v. Borak,* 377 U.S. 426, 434 [84 S.Ct. 1555, 1560, 12 L.Ed.2d 423] (1964); *Bivens v. Six Unknown Federal Narcotics Agents,* 403 U.S. 388, 394–395 [91 S.Ct. 1999, 2003–2004, 29 L.Ed.2d 619] (1971); *id.,* at 400 [91 S.Ct. at 2006] (Harlan, J., concurring in judgment).

422 U.S. at 78, 95 S.Ct. at 2088.

Evaluating the plaintiffs' claims by the yardstick of the *Cort v. Ash* factors and in light of the entire discussion above, this court holds that the statute in question here, 12 U.S.C. § 2001 *et seq.*, does not create an actionable federal right in favor of the plaintiffs based on the allegations of their complaint that there is no indication of legislative intent, explicit or implicit, either to create such a remedy or to deny one, that it would be inconsistent with the underlying purposes of the legislative scheme of 12 U.S.C. § 2001 *et seq.* to imply such a remedy for the plaintiffs, and that the cause of action alleged here is one traditionally relegated to state law in an area basically of concern to the states, rendering it inappropriate to infer a cause of action in this case based solely on federal law.

While Supreme Court cases subsequent to *Cort v. Ash* call into question the necessity of reviewing all four of the criteria set out there, *see e.g., Cannon v. University of Chicago,* 441 U.S. 677, 99 S.Ct. 1946, 60 L.Ed.2d 560 (1979), and *Touche Ross & Co. v. Redington,* 442 U.S. 560, 99 S.Ct. 2479, 61 L.Ed.2d 82 (1979) plaintiffs' failure in

this case to satisfy any of the criteria set out in *Cort* renders a more particularized analysis unnecessary.

### IV. *Is 28 U.S.C. § 1343 a Proper Basis for Jurisdiction?*

In paragraph 2 of the complaint, the plaintiffs invoke the jurisdiction of the court under 28 U.S.C. § 1343 [11] since they seek relief from the defendants' alleged violation of their rights as guaranteed by the fifth amendment to the Constitution and 42 U.S.C. § 1983. As this court has concluded, the plaintiffs have failed to properly allege any claim arising under the fifth amendment to the Constitution. Thus the sole remaining basis upon which section 1343 jurisdiction may rest is a proper cause of action under 42 U.S.C. § 1983.

42 U.S.C. § 1983 provides a remedy for deprivation of any rights, privileges, or immunities secured by the Constitution and laws of the United States when that deprivation takes place "under color of any statute, ordinance, regulation, custom, or usage" of a state. In this case, the plaintiffs have failed to state a basis for a claim of state action. There has been no allegation that the defendants here are state actors or are participating in a joint venture with the state. The plaintiffs' allegations are, in fact, to the contrary. Here, it is claimed that the defendants are *federal* instrumentalities. Federal instrumentalities, however, are not "persons" subject to section 1983 liability. *See Bivens v. Six Unknown Federal Narcotics Agents,* 403 U.S. 388, 398 n. 1, 91 S.Ct. 1999, 2006 n. 1, 29 L.Ed.2d 619 (1970) (Harlan, J. concurring); *Gonzalez v. Leonard,* 497 F.Supp. 1058, 1073 n. 67 (D.Conn.1980). Further, any assertion that the defendants were acting under color of state law for purposes of section 1983 liability when they entered into the written agreement for deeds in lieu of foreclosure is a clear misstatement of the law. Even if the defendants had resorted to a foreclosure action in state court, there would not have been a cognizable claim under section 1983 since no state action is involved when a state merely opens its tribunals to private litigants. *Hollis v. Itawamba County Loans,* 657 F.2d 746, 749 (5th Cir.1981). *See also Lugar v. Edmonson Oil Co.,* 457 U.S. 922, 939 n. 21, 102 S.Ct. 2744, 2755 n. 21, 73 L.Ed.2d 482 (1982) (where the Supreme Court specifically noted that it did not hold that a private party's mere invocation of state legal procedures constitutes "joint participation" or "conspiracy" with state officials satisfying the section 1983 requirement of action under color of state law). *Cf. Dennis v. Sparks,* 449 U.S. 24, 28, 101 S.Ct. 183, 186, 66 L.Ed.2d 185 (1980) and *Polk County v. Dodson,* 454 U.S. 312, 102 S.Ct. 445, 70 L.Ed.2d 509 (1981) (where the Supreme Court makes clear that independent private decisions made in the context of litigation cannot be said to occur under color of law). *See also Gibson v. First Federal Savings and Loan Association,* 347 F.Supp. 560, 562 (E.D.Mich.1972) (where the court disallowed section 1343 as a basis for jurisdiction in a case of possible foreclosure by a federal savings and loan association).

The only cases cited by the plaintiffs for the proposition that the defendants here may be included as "persons" for purposes of section 1983 liability simply do not stand for that proposition, because neither case involved a federally chartered instrumentality. *See Kentucky Ass'n for Retarded Citizens v. Conn,* 510 F.Supp. 1233 (D.Ky. 1980), *aff'd,* 674 F.2d 582 (6th Cir.), *cert. denied,* 459 U.S. 1041, 103 S.Ct. 457, 74 L.Ed.2d 609 (1982); *Burton v. Wilmington Parking Authority,* 365 U.S. 715, 81 S.Ct. 856, 6 L.Ed.2d 45 (1961). These cases stand only for the proposition that where a private entity performs duties largely with-

---

11. 28 U.S.C. § 1343 provides in pertinent part:
 (a) The district courts shall have original jurisdiction of any civil action authorized by law to be commenced by any person:
 (3) To redress the deprivation, under color of any State law, statute, ordinance, regula-
tion, custom or usage, of any right, privilege or immunity secured by the Constitution of the United States or by any Act of Congress providing for equal rights of citizens or of all persons within the jurisdiction of the United States....

in the province of the state and receives substantial sums of money from the state for the performance of such duties, or where the state can fairly be described as a joint participant in the operation of the affairs of the private entity, there exists a sufficient relationship between the private entity and the state to make the private entity suable as a "person" under section 1983. In this case the defendants were not receiving substantial sums of money from the state for the performance of duties ordinarily largely within the province of the state, nor can any claim be made that the defendants were acting as joint participants with the state within the meaning of *Burton v. Wilmington Parking Authority* and its progeny.

In light of the plaintiffs' failure to state a cognizable claim under 42 U.S.C. § 1983, in that their allegations under the fifth amendment to the United States Constitution are being dismissed, and in that they have not made the necessary showing of "state action" for section 1983 liability, 28 U.S.C. § 1343 is not available as a basis for plaintiffs' claim of federal jurisdiction.

V. *Is the Tucker Act, 28 U.S.C. § 1346(a)(2) a Proper Basis for Federal Jurisdiction Over This Case?*

 Plaintiffs have invoked the Tucker Act, 28 U.S.C. § 1346(a)(2), as a basis for jurisdiction in this court. The Act provides in pertinent part:

(a) The district courts shall have original jurisdiction, concurrent with the United States Claims Court, of:

(2) Any other civil action or claim against the United States, not exceeding $10,000 in amount, founded either upon the Constitution, or any Act of Congress, or any regulation of an executive department, or upon any express or implied contract with the United States, or for liquidated or unliquidated damages in cases not sounding in tort. . . .

The Tucker Act is available for legitimate "taking" claims against the United States based on the theory of inverse condemnation. *Dugan v. Rank*, 372 U.S. 609,

611, 83 S.Ct. 999, 1001, 10 L.Ed.2d 15 (1963). The Tucker Act itself is only a jurisdictional statute; it does not create any substantive right enforceable against the United States for money damages. *United States v. Testan*, 424 U.S. 392, 96 S.Ct. 948, 47 L.Ed.2d 114 (1976); *Graham v. Henegar*, 640 F.2d 732 (5th Cir.), *reh'g denied*, 646 F.2d 566 (5th Cir.1981).

Plaintiffs' reliance on the Tucker Act as a basis for jurisdiction in this case must fail on several grounds. First, plaintiffs have failed to properly allege any federal substantive right upon which Tucker Act jurisdiction can be based. Having found that the plaintiffs have failed to state a claim either directly under the fifth amendment to the Constitution or "arising under" the Constitution or laws of the United States, Tucker Act jurisdiction is not available. Second, by its very terms, the Tucker Act does not extend to cases like the present one where the defendants are entities in which the United States has no proprietary interest. Since this action cannot reach the United States itself, the Tucker Act is not available as a basis for jurisdiction. *See Federal Housing Administration v. Burr*, 309 U.S. 242, 250, 60 S.Ct. 488, 492, 84 L.Ed. 724 (1940) (funds or property of the United States cannot be held responsible for payment of judgment pursuant to "sue and be sued" statutory authority granted to agency); *Dugan v. Rank, supra*, 372 U.S. at 620, 83 S.Ct. at 1006 (the general rule is that a suit is against the sovereign if "the judgment sought would expend itself on the public treasury or domain, or interfere with the public administration" or if the effect of the judgment would be "to restrain the Government from acting, or to compel it to act") (citations omitted). *Cf.* 12 U.S.C. § 2155. Finally, the Tucker Act explicitly states that district court jurisdiction of suits brought under the Act is limited to those involving claims seeking no more than $10,000 damages. There is no doubt that the plaintiffs here seek damages far in excess of the $10,000 limit. Thus the Tucker Act is not a proper basis for federal district court jurisdiction over this case.

*Conclusion*

In light of the determination that the allegations of the complaint in this case do not describe a "taking" giving rise to a right under the fifth amendment to the United States Constitution, nor a case arising under the Farm Credit Act of 1933, as amended in 1971, nor a case arising under federal common law, nor an action pursuant to 42 U.S.C. § 1983, nor a suit against the United States, nor any other basis for a finding of federal jurisdiction, this court hereby grants the defendants' motion to dismiss the complaint for lack of federal subject matter jurisdiction.

SO ORDERED.