Obed A. KALWITZ, Sr. and Helen Kalwitz, husband and wife; Obed A. Kalwitz, Jr. and Rolene Kalwitz, husband and wife; and Eugene Kalwitz, Defendants-Appellants,

v.

LA PORTE PRODUCTION CREDIT ASSOCIATION, Plaintiff-Appellee.

No. 46A03–8607–CV–203.

Court of Appeals of Indiana, Third District.

June 9, 1987.

Rick C. Gikas, Merrillville, for defendants-appellants.

James L. Sullivan, Valparaiso, for plaintiff-appellee.

GARRARD, Presiding Judge.

### Facts

This appeal is procedural in nature in that it is based on the trial court's grant of a motion to dismiss a counterclaim in a farm foreclosure action instituted by the LaPorte Production Credit Association (LPCA) against Obed A. Kalwitz, Sr., Helen Kalwitz, Obed A. Kalwitz, Jr., Rolene Kalwitz and Eugene Kalwitz (the Kalwitzes). The Kalwitzes own and operate grain and livestock farms in LaPorte County, Indiana, The LPCA is a federally chartered corporation created under the Farm Credit Act of 1933, 12 U.S.C. Section 636 *et seq.*, and operates its principal place of business in LaPorte, Indiana, pursuant to the Farm Credit Act of 1971, 12 U.S.C. Section 2001 *et seq.*

From 1981 through 1984, LPCA made several loans to the Kalwitzes for farm operation expenses. On March 13, 1984, the Kalwitzes signed a promissory note evidencing their receipt of a loan from LPCA in the amount of $400,000.00. While the note itself provided that the Kalwitzes were to repay the above-stated sum with interest on or before March 13, 1985, LPCA extended the due date to May 8, 1985. This note was secured by two mortgages on the Kalwitzes' farmland, livestock, machinery and farm equipment.

Prompted by the Kalwitzes' failure to repay the loan by the extended due date, LPCA instituted the foreclosure action below seeking payment of the balance due, $354,793.78. The Kalwitzes filed an answer alleging fraud and misrepresentation as affirmative defenses and also included a counterclaim against LPCA alleging fraud and misrepresentation in the parties' financial dealings since 1981.[1] In their counterclaim, the Kalwitzes sought $19,438,057.00 in compensatory and punitive damages. LPCA then filed a motion to dismiss this counterclaim for failure to state a cause of action and lack of subject matter jurisdiction. The trial court granted, without opinion, LPCA's motion to dismiss. The Kalwitzes now appeal to this court.

The dispositive issue in this appeal is whether a production credit association (PCA) organized under the Farm Credit Act can be sued for monetary damages in state court.[2]

We reverse in part and affirm in part.

---

1. The Kalwitzes claimed the LPCA wrongfully withheld various loans for operating expenses which LPCA originally promised to provide, and fraudulently induced the Kalwitzes to mortgage more of their land than the Kalwitzes intended.

2. It is important to note, at the outset, that this appeal does not involve the question whether the Farm Credit Act provides a private right of action or creates an independent substantive cause of action. Both the Kalwitzes and LPCA

### Discussion

■ The Kalwitzes initially argue that the trial court's dismissal of their counterclaim was error because the counterclaim was based on state common law, fraud, misrepresentation and breach of contract, all areas within the trial court's jurisdiction. The Kalwitzes further contend that Congress waived sovereign immunity for suits against PCAs by retaining the "sue or be sued" language in the Farm Credit Act, and thereby manifested its intention that PCAs be treated as citizens of the states subject to state law. We agree.

The primary goal of Congress in formulating and instituting the Farm Credit System, 12 U.S.C. Section 2001 *et seq.* was to meet the peculiar credit needs of American farmers and ranchers while encouraging those farmers and ranchers to participate in the system through management, control and ownership of the system and, more specifically, PCAs under the Farm Credit Act. 12 U.S.C. Section 2091 *et seq.; Daley*

*v. Farm Credit Administration* (D.Minn. 1978), 454 F.Supp. 953, 954. The Farm Credit Act of 1971, its amendments and legislative history reveal Congress' intent that PCAs be treated as local privately-owned entities, citizens of the states in which their principal offices were located, and subject to state law. *Birbeck v. Southern New England Production Credit Association* (D.Conn.1985), 606 F.Supp. 1030, 1041. Prior to 1975, exclusive jurisdiction over disputes between borrowers and PCAs was mandatorily relegated to the state courts. *See* 12 U.S.C. Section 2258; *Birbeck, supra,* 606 F.Supp. at 1040; and *South Central Iowa Production Credit Association v. Scanlan* (Iowa 1986), 380 N.W.2d 699, 703. However, in 1975 Congress amended 12 U.S.C. Section 2258 thereby striking the prohibition against federal court jurisdiction over disputes involving PCAs.[3] This amendment provided PCAs access to federal courts but had no effect on the longstanding jurisdiction of

agree that the Farm Credit Act does not provide a private right of action. The courts also support this view. *See Smith v. Russellville Production Credit Association* (11th Cir.1985), 777 F.2d 1544, 1546.

3. In tracing the legislative history and amendments to the Farm Credit Act, the Court in *Birbeck* noted:

"In 1971, 12 U.S.C. Section 2258 provided as follows:

'Each institution of the System shall for the purposes of jurisdiction be deemed to be a citizen of the State, commonwealth, or District of Columbia in which its principal office is located. No district court of the United States shall have jurisdiction of any action or suit by or against any production credit association upon the ground that it was incorporated under this Act or prior Federal law, or that the United States owns any stock thereof, nor shall any district court of the United States have jurisdiction, by removal or otherwise, of any suit by or against such association except in cases by or " 'against the United States or by or against any officer of the United States' or against any person over whom the courts of the State have no jurisdiction, and except in cases by or against any receiver or conservator of any such association appointed in accordance with the provisions of this Act.' "

The statute was amended in 1975 specifically for the purpose of allowing production credit associations to utilize federal courts for the en-

forcement of 'preferred ship mortgages' for which, under the maritime law of the United States, exclusive jurisdiction is in the federal courts.

Following the 1975 Amendment, section 2258 read:

'Each institution of the System shall for the purposes of jurisdiction be deemed to be a citizen of the State, commonwealth, or District of Columbia in which its principal office is located.'

The section-by-section analysis in House Report No. 92–593 relating to the 1971 version of section 2258 reads as follows:

'Citizenship of institutions of the System and judicial jurisdiction found in existing law is retained. However, an exception to the rule that actions relating to production credit association matters must be brought in State courts is made in those cases over which the State courts have no jurisdiction.'

1971 U.S.Code Cong. & Ad.News 2091, 2118. This statement in the legislative history indicates Congressional intent that the state courts retain complete residuary jurisdiction over matters concerning production credit associations and only those cases in which state courts had no jurisdiction could be brought in federal courts. The policy behind the 1975 Amendment is not inconsistent with the original understanding that federal law would not preempt the field. Congress simply wanted all Farm Credit institutions to have the same access to federal district courts. See Pub.L. No. 94–184, 1975 U.S.Code Cong. & Ad.News 2148–2158."

state courts. *Birbeck,* 6060 F.Supp. at 1040, n. 9; *Scanlan,* 380 N.W.2d at 703. PCAs can be sued in state courts.

■ Despite the amendments, legislative history and the "sue or be sued" language of the Farm Credit Act, LPCA claims that whether PCAs can be sued for monetary damages is governed exclusively by federal law rather than Indiana law. Since federal law provides no monetary remedies against PCAs and sovereign immunity bars all actions for damages against federal instrumentalities such as PCAs, the trial court had no choice but to dismiss the Kalwitzes' counterclaim. We disagree.

■ First, while generally the United States and its agencies and state instrumentalities enjoy immunity from suit, Congress waived sovereign immunity in suits against PCAs for monetary damages, other than punitive damages, by its use of the "sue or be sued" language in the Farm Credit Act. *Smith v. Russellville Production Credit Association* (11th Cir.1985), 777 F.2d 1544, 1549; *In re Sparkman* (9th Cir.1983), 703 F.2d 1097, 1101; *and see Federal Housing Administration v. Burr* (1940), 309 U.S. 242, 60 S.Ct. 488, 84 L.Ed. 724. Thus, LPCA's "sovereign immunity" argument is correct only in regard to punitive damage awards against PCAs.[4]

Second, while admittedly there exists a "pervasive involvement of the federal government in the creation and operation of PCAs," this fact alone does not necessarily dictate that federal common law rather than Indiana law must apply to disputes involving PCAs. *Boyster v. Roden* (8th Cir.1980), 628 F.2d 1121, 1124. In primary reliance on *Smith, supra,* LPCA concludes that because PCAs are federal

entities, federal common law must apply. In *Smith* the court noted:

"The PCAs were chartered in 1933 and initially funded by government loans. The government loans were completely paid off by 1968. At the present time, PCAs are privately organized, owned, and operated corporations. Like other private organizations, PCAs can sue and be sued. 12 U.S.C.A. Section 2093(4). However, despite their 'private' characteristics, PCAs remain federal instrumentalities, operated pursuant to Congressional mandate. This status was reaffirmed in a 1971 amendment to the Farm Credit Act of 1933, in which Congress stated that '[e]ach production credit association ... shall continue as a federally chartered instrumentality of the United States.' 12 U.S.C.A. Section 1091.

A federal instrumentality does not divest itself of the privileges of instrumentality status when it acts more like a privately owned institution than a federal agency. *Matter of Sparkman,* 703 F.2d 1097, 1101 (9th Cir.1983). We therefore hold that punitive damages cannot be awarded against PCAs."

777 F.2d at 1550. We acknowledge the federal status of PCAs as noted in *Smith, supra,* but the guiding principle in deciding whether federal common law applies is whether a significant conflict exists between some federal policy or interest and the use of state law to resolve the dispute. Such a conflict must be specifically shown. *Boyster, supra,* 628 F.2d at 1124 (quoting *Wallis v. Pan American Petroleum Corporation* (1966), 384 U.S. 63, 68, 86 S.Ct. 1301, 1304, 16 L.Ed.2d 364).[5] The substan-

---

4. It is not disputed that punitive damage awards cannot be recovered from PCAs. The court in *Sparkman* agreed:

"[W]hile the 'sue and be sued' clause in the enabling legislation for production credit associations waives sovereign immunity from ordinary lawsuits, it does not subject production credit associations to liability for punitive damages. Such immunity must be waived expressly. *See Painter v. Tennessee Valley Authority,* 476 F.2d 943 (5th Cir.1973)."

703 F.2d at 1101; *see also Smith, supra.*

5. LPCA's "federal common law" argument at second blush resembles a preemption claim. However, the court in *Birbeck, supra,* noted:

"Glaring evidence that Congress did not intend that federal law preempt the field with respect to federal land banks and production credit associations can be found in the 1980 Amendments to the Farm Credit Act, specifically 12 U.S.C. Section 2214, which provides that state and other laws shall apply to service corporations organized pursuant to part D of that legislation to the same extent that such laws would apply to the organizing banks

tial federal interest in successful operation of the Farm Credit System is apparent; however, like the courts in *Boyster* and *Birbeck,* we are not persuaded that this interest will be impaired by the application of Indiana law to the Kalwitzes' counterclaim against the LPCA. While state law on fraud, misrepresentation and breach of contract may differ somewhat among the states, we perceive no true burden to the System since each PCA is a separate entity with a local situs and with local transactions. Like the appellants in *Boyster,* LPCA has neither demonstrated any significant conflict between a federal policy or interest and Indiana law as it applies to the instant case, nor has LPCA shown that Indiana law is inadequate to protect its rights. *See Boyster, supra.* Therefore, we find that Indiana law governs the Kalwitzes' counterclaim against the LPCA and that the trial court erred in dismissing so much of the counterclaim as sought compensatory damages.

■ We hold that LPCA is amenable to suit in state court for compensatory damages but not for punitive damages. We reverse the trial court's decision with instructions to reinstate the Kalwitzes' counterclaim except to the extent it seeks punitive damages.

Reversed and remanded.

CONOVER, P.J. and HOFFMAN, J., concur.

already existing under the Farm Credit System that were engaged in the same activity in the same jurisdiction. The necessary implication of section 2214 is that federal law has not preempted the field with respect to banks

chartered under the Farm Credit Act and that to some degree, although unspecified in the statute, state law will control their activities." 606 F.Supp. at 1041. Thus, preemption is not an issue in this case.