Avner W. DeLAIGLE and Allen B. DeLaigle, Plaintiffs,

v.

The FEDERAL LAND BANK OF COLUMBIA; The Federal Land Bank Association of Louisville, Georgia, Waynesboro Branch Office; John M. Lovett, Jr., individually and in his official capacity as Vice-President/Branch Manager of The Federal Land Bank of Louisville, Georgia, Waynesboro Branch Office; and the Farm Credit Administration, Defendants.

Civ. A. No. CV183–109.

United States District Court,
S.D. Georgia,
Augusta Division.

Aug. 1, 1983.

---

**1434**

Martha A. Miller, Atlanta, Ga., Jerry M. Daniel, Waynesboro, Ga., for plaintiffs.

R.U. Harden, Waynesboro, Ga., J. Douglas Stewart, Telford, Stewart, Melvin & House, Gainesville, Ga., Patrick J. Rice, Hull, Towill, Norman & Barrett, Augusta, Ga., for Federal Land Bank of Columbia, Federal Land Bank Ass'n of Louisville, Ga., Waynesboro Branch Office and John M. Lovett, Jr.

Benjamin B. Boyd, Columbia, S.C., for other defendants.

Henry L. Whisenhunt, Jr., Augusta, Ga., Kathleen M. Mullarkey, Washington, D.C., for Farm Credit Admin.

## ORDER

BOWEN, District Judge.

Before this Court is the plaintiffs' request for a preliminary injunction to halt the nonjudicial foreclosure of the plaintiffs' real property securing their farm loans with the Federal Land Bank of Columbia.[1]

On April 11, 1983, the plaintiffs filed a complaint alleging an unconstitutional violation of their Fifth Amendment rights to be advised of appropriate loan adjustment procedures for their farm loans. The plaintiffs, in essence, contended that they have a legitimate property interest in this information from the Federal land bank and that the Federal land bank, as a governmental agency, may not deprive them of this property interest without affording them constitutional due process.

On July 5, 1983, the plaintiffs filed a motion for a temporary restraining order to enjoin the Federal land bank from foreclosing on the plaintiffs' defaulted farm loans. Subsequently an order was entered requiring the defendants to show cause why the scheduled foreclosure should not be enjoined. On July 14, 1983, the Court held a hearing on the plaintiffs' motion where both parties addressed substantially similar issues raised by the complaint. Since the defendants had notice of the plaintiffs' motion and all parties engaged in a full hearing, the Court converted the motion for a temporary restraining order into one for a preliminary injunction pursuant to Rule 65 of the Federal Rules of Civil Procedure.

■ The Court initially notes "that a preliminary injunction is an extraordinary and drastic remedy which should not be granted unless the movant clearly carries the burden of persuasion." *Canal Authority v. Callaway*, 489 F.2d 567 (5th Cir.1974). It is well-established that a movant must prove four essential elements in order to prevail on a motion for a preliminary injunction: 1) a substantial likelihood that the movant will eventually prevail on the merits; 2) a substantial threat that the movant will suffer irreparable injury if the injunction is not granted; 3) that the threatened injury to the movant outweighs the threatened harm the injunction may do to the opposing party; and 4) that granting the preliminary injunction will not disserve the public interest. *See Hardin v. Houston Chronicle Publishing Co.*, 572 F.2d 1106, 1107 & n. 2 (5th Cir.1978) (citing other cases).

The parties in this case have correctly focused their attention upon the first prerequisite that there must be a substantial likelihood that the movant will eventually prevail on the merits before the Court will order a preliminary injunction. Without a doubt, the plaintiffs will suffer an irreparable injury if the Court does not enjoin this foreclosure. The plaintiffs will lose their farm property and their farming business. This threatened loss definitely outweighs the threatened harm to the defendants that

---

1. Also named as a defendant in this action—the Federal Land Bank Association of Louisville, Georgia, Waynesboro Branch Office—is a branch office of the Federal Land Bank of Columbia. Mr. John M. Lovett, Jr., is the Vice-President/Branch Manager of the Federal Land Bank Association of Louisville, Georgia, Waynesboro Branch Office.

would result if the Court preliminarily enjoins the foreclosure on the plaintiffs' defaulted farm loans. While the adverse farming weather and poor economic conditions have caused defaulting on farm loans to be a matter of public concern, the Court refuses to determine whether a grant or a denial of a preliminary injunction would better serve the public interest. The Court will state, however, that granting a preliminary injunction in this case would not seem to disserve the public interest.

Even though the plaintiffs quickly satisfy three of the four requirements for the issuance of a preliminary injunction, the Court must observe the instructions of the former Fifth Circuit in *Texas v. Seatrain International, S.A.,* 518 F.2d 175 (5th Cir. 1975):

> No matter how severe and irreparable an injury one seeking a preliminary injunction may suffer in its absence, the injunction should never issue if there is *no* chance that the movant will eventually prevail on the merits. Nor is there need to weigh the relative hardships which a preliminary injunction or the lack of one might cause the parties unless the movant can show *some* likelihood of ultimate success. Obviously, it is inequitable to temporarily enjoin a party from undertaking activity which he has a clear right to pursue.

*Id.* at 180. This Court, therefore, must proceed to determine whether the plaintiffs

in this case show a substantial likelihood of eventual success on the merits.

The plaintiffs contend that they are entitled to be advised of and considered for the loan servicing mechanisms prescribed by statute and regulation. This entitlement is a legitimate property interest protected by the Fifth Amendment. The Federal land bank, as a governmental agency, may not deprive the plaintiffs of this property interest by foreclosing on the defaulted farm loans without affording the plaintiffs constitutional due process.

### A. ENTITLEMENT

The Farm Credit Act of 1971, 12 U.S.C. §§ 2001 *et seq.* (1976), states in part:

> The Federal land banks may provide technical assistance to borrowers, members, and applicants and may make available to them at their option such financial related services appropriate to their on-farm operations as determined to be feasible by the board of directors of each district bank, under regulations of the Farm Credit Administration.[2]

*Id.* at § 2019. The Code of Federal Regulations, applicable to this statutory section, specifies that the objective of the policies and procedures for federal land banks concerning the servicing of loans "*shall* be to provide borrowers with prompt and efficient service.... The policy *shall* provide a means of forbearance for cases when the borrower is cooperative." 12 C.F.R. § 614.-4510(d)(1) (1981).[3]

---

**2.** The phrase "at their option" in this statutory section clearly relates to the option of the "borrowers, members, and applicants." The defendants derive no option from this language to decide whether to provide financially related services. The terms "may make available" and "as determined to be feasible," however, may provide the defendants some discretion if the regulations do not specify otherwise.

**3.** The Federal Farm Credit Board promulgated these regulations for the Farm Credit Administration pursuant to 12 U.S.C. § 2243 (1976). The applicable regulatory section states in full:

> The banks and associations that are primary lenders shall be responsible for the servicing of the loans which they make. The boards of directors shall direct the banks and associations to adopt loan servicing policies

and procedures to assure that loans will be serviced fairly and equitably for the borrower while minimizing the risk for the lender. Procedures shall include specific plans which help preserve the quality of sound loans and which help correct credit deficiencies as they develop.

> (d) In the development of the bank and association policies and procedures, the following criteria shall be included:
> (1) *Term loans.* The objective shall be to provide borrowers with prompt and efficient service with respect to justifiable actions in such areas as personal liability, partial release of security, insurance requirements or adjustments, loan division or transfers, conditional payments, extensions, deferments or. reamortizations. Procedures shall provide

The plaintiffs allege that this statutory language and the corresponding regulation establish a legitimate entitlement that the plaintiffs be advised of and considered for all the loan servicing techniques appropriate for their farm loans, before the Federal land bank forecloses on these loans. They contend that they are "cooperative, making an honest effort to meet the conditions of the loan contract; and [are] capable of working out of the debt burden." *Id.* The plaintiffs claim that they have received no advice about any loan servicing techniques to avoid default; therefore, they ask for general information rather than any specific procedure.

The defendants counter these contentions with the broad denial that any statute or regulation bestows on the plaintiffs a right to receive information from the Federal land bank concerning loan servicing techniques. Even if the cited statute and regulation did entitle the plaintiffs to such a right, the defendants alternatively allege that the Federal land bank supplied the appropriate information to the plaintiffs through the plaintiffs' use of "loan service" applications to the Federal land bank on four separate occasions.[4]

■ Against these contentions by both plaintiffs and defendants, the Court must decide whether the plaintiffs are entitled to receive information on and be considered for loan servicing techniques. While the statute appears to allow the board of directors of an appropriate district to exercise discretion in determining the feasibility of any loan service,[5] this discretion is subject to the applicable regulations. These regulations clearly require that Federal land banks "shall provide a means of forbearance." 12 C.F.R. § 614.4510(d)(1).[6] The natural implication from such regulatory language is that the Federal land banks not only should establish loan servicing techniques but also should advise the borrowers about these procedures. There would be no reason to require a "means of forbearance" if the borrowers did not have the knowledge to request that the techniques be applied to their loans. The Court finds that if the plaintiffs do actually meet the three conditions mentioned in 12 C.F.R. § 614.4510(d)(1) in regards to the exercise of forbearance, then they should have received information from the defendants concerning any loan servicing techniques appropriate for the defaulted farm loans.

■ One factual dispute remains, however. The plaintiffs allege that they either never received any loan servicing information or did not understand whatever information they did receive. The defendants contend that the Federal land bank properly advised the plaintiffs about all loan servicing procedures. The Court notes that one of the plaintiffs testified at the hearing that both plaintiffs have jointly engaged in many diverse business endeavors. These plaintiffs are experienced businessmen rather than naive consumers. The Court holds that the standards for the plaintiffs' right to receive information from the Federal land bank does not approach the stringent disclosure standard for consumers

for adequate inspections, reanalysis, reappraisal, controls on payment of insurance and taxes (and for payment when necessary), and prompt exercise of legal options to preserve the lender's collateral position or guard against loss. The policy shall provide a means of forbearance for cases when the borrower is cooperative, making an honest effort to meet the conditions of the loan contract, and is capable of working out of the debt burden. Loan servicing policies for rural home loans shall recognize the inherent differences between agricultural and rural home lending.
12 C.F.R. § 614.4510(d)(1) (1981).

4. The defendants introduced these four applications into evidence at the hearing on the pre-

liminary injunction. On the front side of each application were the bold words: APPLICATION AND AGREEMENT FOR REAMORTIZATION, CHANGE OF MATURITY DATE(S), EXTENSION AND/OR DEFERMENT. At the bottom of the front side was the heading: Action on Change of Maturity Dates. On the back were the headings: Action On Request For Deferment, Action On Application For Extension, and Action On Application For Reamortization.

5. *See* note 2 and accompanying text, *supra.*

6. *See* note 3, *supra.*

rights guaranteed by the Consumer Credit Protection Act, 15 U.S.C. §§ 1601 *et seq.* (1976). The plaintiffs only have a right to be apprised in some fashion by the Federal land bank of the loan servicing techniques available. Since these plaintiff businessmen utilized the "loan service" applications with the Federal land bank that listed on these documents in bold headings the various loan servicing methods, the Court determines that the plaintiffs were so apprised. The Court, however, will not base its decision on this factual point but will dispose of this matter on more substantive grounds.

### B. PROPERTY INTEREST

The next inquiry for the Court is whether this right derived from the regulations has the "force and effect of law." The former Fifth Circuit has explained:

> Furthermore, "[i]n order for a regulation to have the 'force and effect of law,' it must have certain substantive characteristics and be the product of certain procedural requisites." *Chrysler Corp. v. Brown,* 441 U.S. 281, 301, 99 S.Ct. 1705, 1717, 60 L.Ed.2d 208 (1979). More specifically, the regulation must be a substantive or legislative-type rule—*i.e.* one "affecting individual obligations," *Morton v. Ruiz,* 415 U.S. 199, 232, 94 S.Ct. 1055, 1073, 39 L.Ed.2d 270 (1971)—which has been issued by the agency pursuant to statutory authority and promulgated in accordance with the procedural requirements of the Administrative Procedure Act. *Chrysler Corp. v. Brown,* 441 U.S. at 302–303, 99 S.Ct. at 1718.

*United States v. Harvey,* 659 F.2d 62, 64 (5th Cir.1981). *See also United States v. Mississippi Power & Light Co.,* 638 F.2d 899 (5th Cir.1981).

This Court finds that the Federal Farm Credit Board issued the regulations in question in this case, pursuant to the authority specified in the statutory section labelled "Powers of the Federal Farm Credit Board," 12 U.S.C. § 2243 (1976). Section 2243 states in part that "[t]he Federal Farm Credit Board shall establish the general policy for the guidance of the Farm Credit Administration." The loan servicing techniques that Federal land banks may provide—according to 12 U.S.C. § 2019 (1976)—are subject to the regulations of the Farm Credit Administration. This Court concludes, therefore, that these regulations in question were issued by the appropriate agency pursuant to statutory authority.

The regulation states in part that "[t]he policy *shall* provide a means of forebearance." 12 C.F.R. § 614.4510 (1981) (emphasis added). This language does not blandly describe agency policy. The use of the word "shall" dictates agency policy. The provisions of this regulation are substantive rules that Federal land banks must follow when they service farm loans. These provisions affect individual obligations. The borrowers whose loans the Federal land banks service benefit by this "means of forbearance." While the Court has focused its attention on this "forbearance" provision of the regulation, the Court concludes that section 614.4510 in its entirety is a substantive rule affecting "individual obligations."

The defendants, who would have the Court reject the idea that the regulation has the "force and effect of law," have not offered any evidence suggesting that section 614.4510 does not comply with the Administrative Procedure Act, 5 U.S.C. §§ 551 *et seq.* (1976). The Court notes that this regulation appeared at 37 F.R. 11424 on June 7, 1972. Without any indication otherwise, the Court concludes that the regulation in question here was issued in accordance with the procedural requirements of the Administrative Procedure Act.

The Court, therefore, concludes that section 614.4510 has the "force and effect of law." The defendants contend, however, that the Court should follow the holding in *United States v. Harvey, supra.* In *Harvey,* the former Fifth Circuit declined to give a VA manual the "force and effect of law." Both sides in *Harvey* conceded "that the manual's provisions are not formal agency regulations." *Id.* at 64. Unlike the VA manual in *Harvey,* section 614.4510 is a formal agency regulation promulgated pursuant to statutory authority. For this rea-

son, the Court determines that the *Harvey* case is distinguishable on its facts.

■ Even though 12 C.F.R. § 614.4510 may entitle the plaintiffs to receive information of and consequently be considered for certain loan servicing information and this regulation has the "force and effect of law," the Court must consider whether the Fifth Amendment protects this entitlement. The Court notes initially that the restraint imposed upon legislation by the due process clause of the Fifth and Fourteenth Amendments is essentially the same. *Morehead v. New York*, 298 U.S. 587, 610, 56 S.Ct. 918, 922, 80 L.Ed. 1347 (1936); *Hibben v. Smith*, 191 U.S. 310, 325, 24 S.Ct. 88, 91, 48 L.Ed. 195 (1903). While the plaintiffs only argue for the recognition of a cause of action under the Fifth Amendment, the Court will subsequently cite cases that involve either Fifth or Fourteenth Amendment claims.

The United States Supreme Court has recognized that:

> The Fourteenth Amendment's protection of "property," however, has never been interpreted to safeguard only the rights of undisputed ownership. Rather, it has been read broadly to extend protection to "any significant property interest," *Boddie v. Connecticut*, 401 U.S. [371], at 379, [91 S.Ct. 780, at 786, 28 L.Ed.2d 113], including statutory entitlements. *See Bell v. Burson*, 402 U.S. at 539 [91 S.Ct. at 1589]; *Goldberg v. Kelly*, 397 U.S. at 262 [90 S.Ct. at 1017].

*Fuentes v. Shevin*, 407 U.S. 67, 86, 92 S.Ct. 1983, 1997, 32 L.Ed.2d 556 (1972). The Supreme Court has found statutory entitlements protected by procedural due process in the suspension of driver licenses, *Bell v. Burson*, 402 U.S. 535, 91 S.Ct. 1586, 29 L.Ed.2d 90 (1971); the withdrawal of welfare benefits, *Goldberg v. Kelly*, 397 U.S. 254, 90 S.Ct. 1011, 25 L.Ed.2d 287 (1970); the disqualification of unemployment compensation, *Sherbert v. Verner*, 374 U.S. 398, 83 S.Ct. 1790, 10 L.Ed.2d 965 (1963); the discharge from public employment, *Slochower v. Board of Education*, 350 U.S. 551,

76 S.Ct. 637, 100 L.Ed. 692 (1956); and the denial of a tax exemption, *Speiser v. Randall*, 357 U.S. 513, 78 S.Ct. 1332, 2 L.Ed.2d 1460 (1958). "The extent to which procedural due process must be afforded the recipient is influenced by the extent to which he may be 'condemned to suffer grievous loss,' ... and depends upon whether the recipient's interest in avoiding that loss outweighs the governmental interest in summary adjudication." *Goldberg v. Kelly*, 397 U.S. at 262–63, 90 S.Ct. at 1017–18.

While the Supreme Court has recognized "statutory entitlements" in these cited cases, the entitlement in question in this case is regulatory. This Court questions whether a regulatory entitlement, even if it does have the "force and effect of law," qualifies for the constitutional protection of procedural due process. The Court, however, assumes *arguendo* that the procedural due process of the Fifth Amendment applies to the plaintiffs' regulatory entitlement derived from 12 C.F.R. § 614.4510.

### C. GOVERNMENTAL AGENCY

■ Even though the plaintiffs may have the regulatory right to be advised of and considered for loan servicing techniques and this right may be protected by the Fifth Amendment, the Court must finally determine whether the Federal land bank is a governmental agency. It is the established rule that the provisions of the federal due process clause are inhibitions upon the power of government and its agencies rather than upon the freedom of action of private persons. *Public Utilities Commission v. Pollak*, 343 U.S. 451, 461–62, 72 S.Ct. 813, 820, 96 L.Ed. 1068 (1952) (citing other cases).

Another court in *Federal Land Bank of Columbia v. Cotton*, 410 F.Supp. 169 (N.D. Ga.1975), has already considered this question. The *Cotton* court construed the definition of "agency" in 28 U.S.C. § 451; however, the court also noted 28 U.S.C. § 1349.[7]

---

7. This statute reads in full:

> The district courts shall not have jurisdiction of any civil action by or against any corpora-

The court interpreted the inter-relationship of these two sections as follows:

> If plaintiff [Federal Land Bank of Columbia] were considered an agency merely because it was chartered and regulated by the federal government, § 1349 would be rendered meaningless. But when 28 U.S.C. § 451, defining the term "agency," and § 1349 are read together, it is clear that a federally-chartered corporation is not an "agency" unless the government has a substantial proprietary interest in it, or at least exercises considerable control over operation and policy in the corporation . . . . The plaintiff bank, on the other hand, was obviously meant to be a private, rather than governmental, corporation which would merely be subject to various federal regulations.

*Id.* at 171.

This Court finds the rationale of the *Cotton* court persuasive. Without belaboring ground already covered by the *Cotton* court, this Court notes two additional points. First, even though Federal land banks are "federally chartered instrumentalities of the United States" pursuant to 12 U.S.C. § 2011 (1976), the Congressional policy behind the Farm Credit Act of 1971, as stated in 12 U.S.C. § 2001, establishes that Congress recognized that the Farm Credit System was to be "farmer-owned," rather than owned by the federal government.[8]

■ Second, the former Fifth Circuit in *Roberts v. Cameron-Brown Co.,* 556 F.2d 356 (5th Cir.1977), stated that "[t]he

government must be involved with the activity that causes the injury, . . . and it is not enough to show that the government heavily regulates the private company whose activities are challenged." *Id.* at 358 (omitted cite). *See also Jackson v. Metropolitan Edison Co.,* 419 U.S. 345, 95 S.Ct. 449, 42 L.Ed.2d 477 (1974) (public utility's termination of electric service). The Court concludes that the admittedly heavy regulation of federal land banks does not transform these entities into governmental agencies.

■ For all these reasons, therefore, the Court holds that the Federal Land Bank of Columbia is a private corporation without sufficient governmental involvement to support a cause of action under the federal due process clause of the Fifth Amendment. Since there is little, if any, chance that plaintiffs would eventually succeed on the merits of this case, the plaintiffs' motion for a preliminary injunction is DENIED.

The Court realizes that its consideration of and ruling on the plaintiffs' motion here could dispose of a motion from the defendants to dismiss this complaint for failure to state a claim upon which relief can be granted, pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. Even though after the hearing on July 14, 1983, such a motion would be treated as a Rule 56 motion for summary judgment, pursuant to Rule 12(c) of the Federal Rules of Civil Procedure, the Court has received no dispos-

---

tion upon the ground that it was incorporated by or under an Act of Congress, unless the United States is the owner of more than one-half of its capital stock.

28 U.S.C. § 1349 (1976).

**8.** The statute—entitled "Congressional declaration of policy and objectives"—reads as follows:

(a) It is declared to be the policy of the Congress, recognizing that a prosperous, productive agriculture is essential to a free nation and recognizing the growing need for credit in rural areas, that the farmer-owned cooperative Farm Credit System be designed to accomplish the objective of improving the income and well-being of American farmers and ranchers by furnishing sound, adequate,

and constructive credit and closely related services to them, their cooperatives, and to selected farm-related businesses necessary for efficient farm operations.

(b) It is the objective of this Act to continue to encourage farmer- and rancher-borrowers participation in the management, control, and ownership of a permanent system of credit for agriculture which will be responsive to the credit needs of all types of agricultural producers having a basis for credit, and to modernize and improve the authorizations and means for furnishing such credit and credit for housing in rural areas made available through the institutions constituting the Farm Credit System as herein provided.

12 U.S.C. § 2001 (1976).

itive motions whatsoever from the defendants.

 The Court is reluctant to dismiss this case *sua sponte* without a motion from the defendants. Professor Moore has advised:

> While Rule 12 expressly provides for treating a motion to dismiss for failure to state a claim or for judgment on the pleadings as a motion for summary judgment where "matters outside the pleading are presented to and not excluded by the court," no other provisions in the Rules, including Rule 56, authorize such a practice. While there is some *contra* authority, we believe the court should rarely consider entering summary judgment *sua sponte* where no party has moved for summary judgment or the provisions of Rule 12 are not satisfied.

6 *Moore's Federal Practice* ¶ 56.12 at 56–338 & –339 (1982). *See Capital Films Corp. v. Charles Fries Productions, Inc.,* 628 F.2d 387 (5th Cir.1980); *Sharlitt v. Gorinstein,* 535 F.2d 282 (5th Cir.1976). The Court will not dismiss this case *sua sponte.* Any motion to dismiss or for other relief based on grounds touched upon by this order shall be filed within thirty days.