SOUTH CENTRAL IOWA PRODUCTION CREDIT ASSOCIATION, a/k/a Creston Production Credit Association, a Corporation, Appellee,

v.

Ed SCANLAN and Edna Scanlan, a/k/a Edna Ella Scanlan, Appellants.

No. 85–241.

Supreme Court of Iowa.

Jan. 15, 1986.

Marlyn S. Jensen, Osceola, for appellants.

Randall H. Stefani of Ahlers, Cooney, Dorweiler, Haynie, Smith & Allbee, Des Moines, and John D. Lloyd of Reynoldson, Van Werden, Kimes, Reynoldson & Lloyd, Osceola, for appellee.

Considered by UHLENHOPP, P.J., and HARRIS, LARSON, CARTER, and WOLLE, JJ.

WOLLE, Justice.

We granted Ed and Edna Scanlan (Scanlans) permission to appeal from two interlocutory rulings, the sustension of a special appearance of plaintiff South Central Iowa Production Credit Association (South Cen-

tral) directed to the Scanlans' counterclaim, and an order striking their jury demand. We reverse and remand, concluding that South Central's special appearance and motion to strike jury demand were both without merit.

## I. *Background.*

South Central commenced this action to foreclose a mortgage on defendants' farmland. Scanlans filed with their answer a counterclaim for damages and a jury demand. The amended counterclaim made a variety of allegations sounding in tort—fraud, misrepresentation, intentional infliction of emotional distress, and defamation—together with the allegation that South Central violated Iowa Code section 554.9404 (1983) which provides that a secured party must file a termination statement.

In response to the counterclaim South Central filed a special appearance challenging the district court's jurisdiction over the counterclaim. South Central also filed a motion to strike the Scanlans' jury demand. The district court sustained the special appearance and struck the jury demand. On the jurisdictional issue, the district court held that federal statutes give the federal district court exclusive jurisdiction over tort actions against production credit associations (PCA's). The court struck the jury demand, determining that foreclosure actions are strictly equitable in nature, as provided by Iowa Code section 611.5 (1985), and the Scanlans therefore were not entitled to a jury trial on the legal issues raised in their counterclaim. We granted the Scanlans' application to appeal those two interlocutory rulings.

## II. *The Special Appearance.*

South Central, like other PCA's, is a federally chartered corporation which exists under and by virtue of the Farm Credit Act of 1933, as amended in 1971. 12 U.S.C. § 2001–2260 (1982). Federal courts would have exclusive jurisdiction over the Scanlans' tort counterclaim, depriving the state court of jurisdiction to that extent, if South

Central is one of those federal entities covered by the Federal Tort Claims Act (FTCA), Title 28 United States Code section 1346(b) (1982). That federal statute provides:

> Subject to the provisions of chapter 171 of this title, the district courts, together with the United States District Court for the District of the Canal Zone and the District Court of the Virgin Islands, *shall have exclusive jurisdiction* of civil actions on claims against the United States, for money damages, accruing on and after January 1, 1945, for injury or loss of property, or personal injury or death caused by the negligent or wrongful act or omission of any *employee of the Government* while acting within the scope of his office or employment, under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred.

(Emphasis added.)

For purposes of section 1346(b), the FTCA defines the term "[e]mployee of the government" to include "officers or employees of any *federal agency* ... and persons acting on behalf of a *federal agency* in an official capacity." 28 U.S.C. § 2671 (emphasis added). Section 2671 also defines "federal agency" for the purposes of the FTCA to include the following:

> As used in this chapter and sections 1346(b) and 2401(b) of this title, the term "Federal agency" includes the executive departments, the military departments, independent establishments of the United States, *and corporations primarily acting as instrumentalities or agencies* of the United States, but does not include any contractor with the United States.

(Emphasis added.) As a federally chartered corporation, South Central would be within that statutory definition of "federal agency" only if it is deemed to be acting primarily as an instrumentality or agency of the United States. We must ascertain whether Congress intended the FTCA to insulate PCA's from state court jurisdiction

over claims sounding in tort like those here pleaded in the Scanlans' counterclaim.

South Central contends that two federal statutes, 12 U.S.C. sections 2091 and 2098, are dispositive of this issue. Section 2091, which provides for the organization and chartering of production credit associations, states in pertinent part:

> Each production credit association chartered under section 20 of the Farm Credit Act of 1933, as amended, shall continue as a federally chartered instrumentality of the United States.... Upon approval of the proposed articles by the Governor and the issuance of a charter, the association shall become as of such date a federally chartered body corporate and an instrumentality of the United States.

Section 2098, which provides tax exempt status for PCA's, states that "[e]ach production credit association and its obligations are instrumentalities of the United States." South Central argues that these federal statutes unequivocally categorize all PCA's as federal instrumentalities, and they have that status for purposes of the FTCA as well. Scanlans respond that those statutes, 12 U.S.C. sections 2091 and 2098, do not confer federal instrumentality status on PCA's for purposes of the FTCA, but only define that status for the explicit purposes covered by title 12 of the Code.

We agree with the Scanlans' contention that no single statutory definition or description of PCA's transforms them into federal instrumentalities for all purposes. The phrase "federal instrumentality" has a chameleon-like character. Whether a PCA is an "instrumentality" for FTCA purposes must turn on the purposes for which that statute provides protection and a determination whether Congress intended its protection to apply to organizations with the character and function of PCA's.

This approach is consistent with *United States v. Orleans*, 425 U.S. 807, 96 S.Ct. 1971, 48 L.Ed.2d 390 (1976) and *Lewis v. United States*, 680 F.2d 1239 (9th Cir.1982). In *Orleans* the court addressed the question whether a community action agency funded under the Economic Opportunity Act of 1964 was a federal instrumentality or agency for purposes of the FTCA, or a "contractor with the United States" excluded from its coverage. The Court concluded that the community action agency's day to day operation was supervised by local officials, not by the federal government; because it was therefore essentially a local, not a federal, enterprise, its employees were not federal employees within the meaning of the FTCA. 425 U.S. at 816, 96 S.Ct. at 1977, 48 L.Ed.2d at 399.

In *Lewis* the court followed the approach suggested in *Orleans* to determine whether federal reserve banks were federal instrumentalities within the meaning of the FTCA. The *Lewis* court considered several factors: whether the federal government controlled the daily physical performance of reserve banks; whether the bank in question was an independent corporation; whether the government was involved in the bank's finances; and whether the mission of the bank furthered the policy of the United States. *Lewis*, 680 F.2d 1240–41. Applying these factors the court determined that the federal reserve bank was not a federal instrumentality for purposes of the FTCA.

We believe that application of those same factors in this case reveals that PCA's are essentially nongovernmental, independent entities which Congress did not intend the FTCA to cover. Like federal reserve banks, PCA's are privately owned. Each PCA sells stock to obtain capital; however, only individual borrowers can purchase shares. 12 U.S.C. § 2094(b). Each PCA is operated by an independent board of directors. 12 U.S.C. §§ 2092, 2093. South Central employees are neither federal employees nor supervised by federal employees.

■ Even though PCA's perform an important governmental function, carrying out federal policy to provide agricultural loans to credit worthy applicants, the performance of an important governmental function is but a single factor and not determinative of FTCA status. *Lewis*, 680

F.2d at 1242; *see Federal Reserve Bank v. Metrocentre Improvement District # 1,* 657 F.2d 183, 185 n. 2 (8th Cir.1981).

We are mindful of the cases cited by appellee which allude to the pervasive involvement of the federal government in the operation of PCA's. *See Merced Production Credit Association v. Sparkman,* 703 F.2d 1097, 1101 (9th Cir.1983); *Schlake v. Beatrice Production Credit Association,* 596 F.2d 278, 281 (8th Cir.1979). Those opinions, however, do not detail that involvement and they are inapposite on the issues we address. In contrast, the record in this case reveals minimal involvement of the federal government in the activities of PCA's in general and South Central in particular.

South Central contends that a literal reading of another statute, 28 U.S.C. section 2680(n), shows that Congress intended to include PCA's within the reach of the FTCA. That section specifically excludes from coverage of the FTCA "[a]ny claim arising from the activities of a Federal land bank, a Federal intermediate credit bank [the parent institution for PCA's], or a bank for cooperatives." South Central argues that by excluding entities similar in function to PCA's but not specifically mentioning PCA's, Congress expressed its intent that PCA's be covered.

At first blush South Central's argument has appeal. We conclude, however, that when Congress specifically excluded from the FTCA entities similar in purpose and function to PCA's (including its parent, the intermediate credit bank) Congress intended also to exclude PCA's. South Central has articulated no policy-based reason nor legislative purpose whatsoever for Congress to insulate PCA's but not very similar institutions of the farm credit system from the jurisdiction of state courts on issues of the type presented in this case. South Central's literal reading of the statute must yield to the Scanlans' sensible, policy-based interpretation of the several federal statutes which we here construe.

Our conclusion is consistent with the federal district court opinions in *DeLaigle v.*

*Federal Land Bank,* 568 F.Supp. 1432 (S.D.Ga.1983), and *Federal Land Bank v. Cotton,* 410 F.Supp. 169 (N.D.Ga.1975).

In *DeLaigle* the court relied on 28 U.S.C. § 1349 in holding that a federal land bank was a private corporation without sufficient government involvement to support a cause of action under the federal due process clause of the fifth amendment. Section 1349 provides:

The district courts shall not have jurisdiction of any civil action by or against any corporation upon the ground that it was incorporated by or under an Act of congress, unless the United States is the owner of more than one-half of its capital stock.

The *DeLaigle* court recognized that the enabling statute described the land bank as a federal instrumentality but reasoned that the act which created the land bank specified that it was to be a "farmer-owned" organization and therefore 28 U.S.C. section 1349 deprived the federal court of jurisdiction notwithstanding the FTCA. *DeLaigle,* 568 F.Supp. at 1439; *accord Birbeck v. Southern New England Production Credit Association,* 606 F.Supp. 1030, 1034–35 (D.Conn.1985). Section 1349 was enacted in an attempt to restrict federal court jurisdiction. *Federal Deposit Insurance Corp. v. National Surety Corp.,* 345 F.Supp. 885, 888 (S.D.Iowa 1972). The purpose of that section was to stem the flood of litigation to which federal courts were subjected as a result of a decision by the Supreme Court that every action by or against a federally chartered corporation presented a federal question. *Murphy v. Colonial Federal Savings & Loan Association,* 388 F.2d 609, 612 (2d Cir.1967).

In *Federal Land Bank v. Cotton,* 410 F.Supp. 169 (N.D.Ga.1975) involved a federal land bank which attempted to foreclose a mortgage in federal court when the defendant was delinquent on a promissory note. The court held that the federal land bank was not an agency of the federal government so as to give the federal court jurisdiction over the action under 28 U.S.C. section 1345. The court reasoned:

Although apparently unaware of the very existence of 28 U.S.C. § 1349, defendant further seeks to avoid its application by claiming that the plaintiff is an agency of the federal government. If the plaintiff were indeed such an agency, this court would arguably have jurisdiction over the action, 28 U.S.C. § 1345. But the plaintiff obviously is not an agency within the meaning of Title 28 of the United States Code. If plaintiff were considered an agency merely because it was chartered and regulated by the federal government, § 1349 would be rendered meaningless. But when 28 U.S.C. § 451, defining the term "agency," and § 1349 are read together, it is clear that a federally-chartered corporation is not an "agency" *unless the government has a substantial proprietary interest in it, or at least exercises considerable control over operation and policy in the corporation....* The plaintiff bank ... was obviously meant to be a private, rather than governmental corporation which would merely be subject to various federal regulations....

*Cotton*, 410 F.Supp. at 171 (emphasis added).

Title 28 U.S.C. section 451, discussed in the *Cotton* case, defines "agency" to include "any department, independent establishment, commission, administration, authority, board or bureau of the United States or any corporation in which the United States has a proprietary interest." The Reviser's Note to section 451 states that "[t]he definitions of agency and department conform with such definitions in section 6 of the revised Title 18, Crimes and Criminal Procedure." *Acorn Investments, Inc. v. Federal Savings & Loan Insurance Corp.*, 363 F.2d 236, 240 (9th Cir.), *cert. denied*, 385 U.S. 970, 87 S.Ct. 506, 17 L.Ed.2d 434 (1966) (quoting Reviser's Note to 28 U.S.C. 451). The Reviser's Note to section 6 states the following:

The phrase 'corporation in which the United States has a proprietary interest' is intended to include those governmental corporations in which stock is not actually issued, as well as those in which stock

is owned by the United States. *It excludes those corporations in which the interest of the Government is custodial or incidental.*

*Id.* (emphasis added) (quoting Reviser's Note to 18 U.S.C. § 6).

Prior to 1975 state courts had exclusive jurisdiction over actions involving PCA's. The 1975 amendment to 12 U.S.C. § 2258, striking the prohibition against federal court jurisdiction over PCA's, was intended to provide PCA's with access to federal courts; it had no apparent effect on the long-standing jurisdiction of the state courts.

■ South Central is not a federal instrumentality within the meaning of the FTCA, and therefore that federal statute does not deprive the Iowa district court of jurisdiction to decide this case. State courts have jurisdiction to decide actions in which PCA's are parties under the "sue and be sued" language of 12 U.S.C. section 2093(4). The district court erred in sustaining South Central's special appearance.

### III. *The Jury Demand.*

South Central contends, and the district court concluded, that because this foreclosure proceeding was equitable in nature, filed pursuant to Iowa Code section 611.5 (1983), Scanlans had no right to a jury trial on the legal issues presented by their counterclaim. We disagree.

■ Iowa Rule of Civil Procedure 177, which provides for the filing of a demand for jury trial, does not distinguish between actions commenced in equity and those brought on the law side of the docket. When a counterclaim to an action in equity asserts claims ordinarily triable to a jury, a jury trial may be demanded with respect to the issues triable at law. A. Vestal & P. Willson, *Iowa Practice* § 18.01, at 337 (1983); *see Conrad v. Dorweiler*, 189 N.W.2d 537, 538–39 (Iowa 1971). The trial court has discretion to permit separate trials of the equitable and legal claims. *Conrad*, 189 N.W.2d at 539; *International*

*Milling Co. v. Gisch,* 256 Iowa 949, 952, 129 N.W.2d 646, 648 (1964). The fact that the plaintiff has instituted an equitable action is not sufficient reason to deprive the counterclaimant of a jury trial with respect to issues ordinarily triable to a jury.

The Scanlans' jury demand requested "trial by jury on all matters triable by jury, as matters of law, including but not limited to the questions of delivery and execution of the note and mortgage." South Central argues that was insufficient as an identification of the issues which would properly be tried to a jury.

South Central cites *Blunt, Ellis & Loewi, Inc. v. Igram,* 319 N.W.2d 189 (Iowa 1982), and *Universal C.I.T. Credit Corp. v. Jones,* 227 N.W.2d 473 (Iowa 1975), but those cases provide only that where a general demand for jury trial follows an amendment to the pleadings and requests jury trial on all issues, the trial court need not sort out the issues to see which are triable to a jury. Rule 177(b) provides that jury trial may be had by written demand within ten days after "the last pleading directed to that issue." The cited cases do not hold that any jury demand may be stricken if it does not specify the issues triable to a jury. Such an interpretation would be inconsistent with the general language of rule 177(c) providing that "[u]nless limited to a specific issue, every such demand shall be deemed to include all issues triable to a jury. If a limited demand is filed, any other party may ... file his demand for a jury trial on some or all other issues."

The trial court should have overruled both South Central's special appearance and its motion to strike the Scanlans' jury demand.

REVERSED AND REMANDED.