No. 87-409 A

IN THE SUPREME COURT OF THE STATE OF MONTANA

1988

ERNEST E. TOOKE and PEGGY TOOKE,
            Plaintiffs and Appellants,
      -vs-

THE MILES CITY PRODUCTION CREDIT ASSOCIATION,
a corporation, THE INTERSTATE PRODUCTION
CREDIT ASSOCIATION, a corporation, and ALBERT
VAN HAMLRYCK,
            Defendants and Respondents.

APPEAL FROM: District Court of the Sixteenth Judicial District,
             In and for the County of Carter,
             The Honorable Peter L. Rapkoch, Judge presiding.

COUNSEL OF RECORD:
      For Appellant:
            Gene Huntley argued, Baker, Montana
      For Respondent:
            George W. Huss, Brown and Huss; Miles City, Montana
            John D. Alexander, Ugrin, Alexander, Zadick & Slovak;
            Great Falls, Montana
            R. Alan Wight argued; Miller, Nash, Wiener, Hager &
            Carlsen, Portland, Oregon
      For Amicus Curiae:
            Brian J. Smith argued, (Deschamps), Missoula, Montana
            Theodore Thompson argued, (Steretts), Havre, Montana
            Warren C. Wenz argued, (R&C Farming & R5 Ranch), Great
            Falls, Montana
            Kenneth R. Dyrud argued, (Kenneth Sollid & Son), Great
            Falls, Montana
            Martin S. King, (Western Mt. Prod. Credit), Missoula,
            Montana
            Brad L. Arndorfer, (Miller & D&M Farms), Billings,
            Montana

Submitted: September 13, 1988

Decided: October 31, 1988

Filed:

Ethel M. Harrison

Clerk

Mr. Justice R. C. McDonough delivered the Opinion of the Court.

This is an appeal from the Sixteenth Judicial District Court, Carter County. The only issue is whether the District Court properly dismissed Appellants Tookes' tort claim against Respondents Miles City Production Credit Association, Interstate Production Credit Association, and Albert Van Hamlryck, (MCPCA), for lack of subject matter jurisdiction. We reverse. (Production credit associations in general are hereinafter referred to as PCA's, and the Federal Tort Claims Act is hereinafter referred to as the FTCA).

This Court has already issued one opinion affirming the District Court. That opinion appears at 45 St.Rep. 641. Subsequent to issuing the first opinion this Court granted Tookes' petition for rehearing, allowed further briefing by the parties and their amici, and heard oral argument. Our decision to reach a result opposite the first opinion issued is based on reconsideration of previously submitted authority, new authority, and recent federal district court decisions which continue to restrict federal subject matter jurisdiction in actions where PCA's attempt to invoke the FTCA. We hereby order the first opinion withdrawn and substitute this opinion in its place.

Tookes alleged that MCPCA's actions on the Tookes' loan application amounted to breach of fiduciary duty and constituted constructive and actual fraud. MCPCA moved to dismiss the suit contending that under the Federal Tort Claims Act subject matter jurisdiction for torts alleged against PCA's rested exclusively in federal court. See 28 U.S.C. § 1346(b) (1982). The District Court agreed citing In the Matter of Sparkman (9th Cir. 1983), 703 F.2d 1097, and Towery v. Willamette PCA (Dist. Ct. Ore. Sept. 19, 1983), No.

2

83-28BE. _Towery_ relied on _Sparkman_ to dismiss a tort claim in state court against an Oregon PCA.

On appeal, Tookes argue that _Sparkman_ does not apply, and that PCA's are exempted from FTCA coverage. Their arguments are premised on the fact that; (1) Congress authorized suit against PCA's in the Farm Credit System legislation, (2) Congress provided for an exemption for PCA's in the FTCA, and (3) under the test set out in Lewis v. United States (9th Cir. 1982), 680 F.2d 1239, PCA's are not instrumentalities for purposes of the FTCA.

Tookes present the further argument on rehearing that our first decision in this case effectively denies tort claimant's access to court for prosecution of claims against PCA's because the Montana Federal District Courts continue to deny federal jurisdiction of such causes of action. See Federal Land Bank of Spokane v. Stiles (D. Mont. March 1, 1988), No. CV 86-69-M-CCL (citing Sterrett v. Milk River PCA (D. Mont. 1986), 647 F.Supp. 299). In particular, Tookes assert that the denial of a forum for their claim violates their rights under the Montana Constitution, Article II, Section 16.

MCPCA responds that: (1) _Sparkman_ controls the extent of the waiver of sovereign immunity granted by the Farm Credit System legislation for tort claims against PCA's, (2) PCA's were not exempted from FTCA coverage even though some of the Farm Credit System's components are arguably exempted, and (3) _Sparkman_ provides the test for determining whether PCA's are instrumentalities for purposes of the FTCA.

MCPCA also responds to Tookes' argument on the rights guaranteed by the Montana Constitution, Article II, Section 16, by asserting that sovereign immunity protections fall outside the constitutional guarantees.

3

MCPCA points out that tort claims against instrumentalities acting primarily as agents of the United States must be pursued according to the FTCA. 28 U.S.C. § 2671 (1982). And tort claims cognizable under the sovereign immunity waiver in the FTCA must be brought in federal district court. 28 U.S.C. § 1346(b) (1982).

The farm credit enabling legislation provides instrumentality status for PCA's. 12 U.S.C. § 2091 (1982). And at least in regard to state taxation, Congress protected PCA's by granting them instrumentality status. 12 U.S.C. § 2098 (1982). MCPCA argues that these statutes and Sparkman demonstrate that PCA's are instrumentalities for purposes of applying the FTCA. '

Tookes argue that despite the instrumentality status of PCA's, they are subject to state court jurisdiction on tort claims. Tookes point out that Sparkman relied on general principles of sovereign immunity rather than the FTCA to find protection from punitive damages for PCA's. The more specific authority, Lewis, allows state court jurisdiction, according to Tookes. We agree with Tookes that Lewis controls over Sparkman.

In Sparkman the Ninth Circuit Court of Appeals reviewed a decision from bankruptcy court where the debtor's counterclaim in tort sought punitive damages from the creditor PCA. The bankruptcy court refused to hold the PCA liable for punitive damages. The Court of Appeals relied on general principles of sovereign immunity to affirm the decision. Sparkman, 703 F.2d at 1100. The fact that Sparkman relied on general principles of sovereign immunity rather than the FTCA is evident by its citation of Painter v. Tennessee Valley Authority (5th Cir. 1973), 476 F.2d 943. Painter held that sovereign immunity protected the Tennessee Valley Authority from punitive damages. Painter, 476 F.2d at

4

944. However, _Painter_ is not a FTCA case because the Tennessee Valley Authority is specifically exempted from the agencies and instrumentalities covered in the FTCA. 28 U.S.C. § 2680(l) (1982). Thus, _Sparkman_ did not decide the issue before us in this case.

Nevertheless, _Sparkman_ stands for the proposition that current federal law grants some of the benefits of sovereign immunity to PCA's. According to the Court,

> The sovereign, along with its agencies and instrumentalities, enjoys immunity from suit unless it waives that immunity. Federal Housing Administration v. Burr, 309 U.S. 242, 244, 60 S.Ct. 488, 490, 84 L.Ed. 724 (1940). A federal instrumentality, therefore, retains its immunity from punitive damages unless Congress _explicitly_ authorizes liability for such damages.

_Sparkman_, 703 F.2d at 1101 (emphasis in original). The case also makes it clear that the waiver of sovereign immunity as found in the sue and be sued provision in the PCA enabling legislation does not waive all sovereign immunity protections. _Sparkman_, 703 F.2d at 1101. And generally, waivers of sovereign immunity are to be strictly construed. Library of Congress v. Shaw (1986), 478 U.S. 310, 106 S.Ct. 2957, 92 L.Ed.2d 250.

On the other hand, however, we agree with Tookes that sue and be sued provisions in general should be construed to include actions sounding in tort, as well as those sounding in contract. Keifer v. Reconstruction Finance Corp. (1939), 306 U.S. 381, 395-96, 59 S.Ct. 516, 520-21, 83 L.Ed. 784, 792-93. And unlike _Shaw_, _Lewis_ considers the more specific issue of whether a particular entity should be classified as a government agency under 28 U.S.C. § 2671, the applicable provision of the FTCA. _Lewis_, 680 F.2d 1240.

5

More recent authority persuades this Court that <u>Sparkman</u> should be distinguished, and <u>Lewis</u> should be applied in favor of Tookes' argument. In the case of In re Hoag Ranches (9th Cir. May 19, 1988), No. 87-2461, the Court considered the status of PCA's to determine whether they should be considered government agencies under Rule 4(a)(1), F.R.App. P. Rule 4(a)(1) allows government agencies 60 days to file a notice of appeal, while private parties are allowed only 30 days. The Court in <u>Hoag Ranches</u> refused to allow the appealing PCA agency status under Rule 4(a)(1) reasoning as follows:

> Considering the history and current status of PCA's, we conclude that they are not government agencies within the meaning of Rule 4(a)(1). We recognize that some factors weigh in favor of finding agency status. PCA's undoubtedly further a government interest in improving the well-being of American farmers and ranchers, and the government was extensively involved in their establishment. At one time it was also actively involved in supervising PCA activities.
>
> We also take note of decisions suggesting that PCA's are, for some purposes, arms of the government. In <u>Schlake v. Beatrice Prod. Credit Ass'n</u> the court found that because of the government's pervasive involvement in the creation and operation of PCA's, PCA action was a colorable basis for jurisdiction in an action alleging a fifth amendment violation. 596 F.2d 278, 281 (8th Cir. 1979). We ourselves have found that PCA's are immune from punitive damages based on their status as federal instrumentalities. In re Sparkman, 703 F.2d 1097, 1101 (9th Cir. 1983).
>
> However, since these cases were decided, the government has withdrawn from management of PCA operations and has taken additional steps to establish PCA's as private entities. The role of the Farm Credit Administration has been changed from supervisor to arms-length regulator. PCA's are now privately owned, organized and operated; the government has no proprietary interest. These

6

changes suggest that PCA's, as they now stand, are not government agencies.

Hoag Ranches, slip op. at 5627.

The method for determining PCA agency status in Hoag Ranches follows along the same lines used for determining FTCA coverage for federal reserve banks in Lewis. For example, in Lewis the Court considered; (1) whether the federal government controlled the entity's detailed physical performance and day to day operations, (2) whether the entity was an independent corporation, (3) whether the government was involved in the entity's finances, and (4) whether the mission of the entity furthered the policy of the United States. In Hoag Ranches each of these factors was addressed, and except for the issue of whether the mission of PCA's furthers U.S policy, the factors weighed for finding no agency status.

Similarly, in South Central Iowa PCA v. Scanlan (Iowa 1986), 380 N.W.2d 699, the Court found that application of the Lewis test lead to the conclusion that PCA's could not claim agency status:

> In Lewis the court followed the approach suggested in Orleans to determine whether federal reserve banks were federal instrumentalities within the meaning of the FTCA. The Lewis court considered several factors: whether the federal government controlled the daily physical performance of reserve banks; whether the bank in question was an independent corporation; whether the government was involved in the bank's finances; and whether the mission of the bank furthered the policy of the United States. Lewis, 680 F.2d 1240-41. Applying these factors the court determined that the federal reserve bank was not a federal instrumentality for purposes of the FTCA.
> We believe that application of those same factors in this case reveals that PCA's are essentially nongovernmental, independent entities

7

> which Congress did not intend the FTCA to cover. Like federal reserve banks, PCA's are privately owned. Each PCA sells stock to obtain capital; however, only individual borrowers can purchase shares. 12 U.S.C. § 2094(b). Each PCA is operated by an independent board of directors. 12 U.S.C. §§ 2092, 2093. South Central employees are neither federal employees nor supervised by federal employees.

Scanlan, 380 N.W.2d at 701. The authority provided by Scanlan, and the new authority provided by Hoag Ranches, leads this Court to conclude that PCA's are not FTCA agencies under the test from Lewis.

MCPCA argues that Hoag Ranches does not apply to the case at bar because the Court in Hoag Ranches relied in part on the 1985 amendments to the Farm Credit Act which made the Farm Credit Administration more of an "arms length regulator" than a "hands on" supervisor. Hoag Ranches, slip op. at 5627. The case at hand arose prior to the amendments, and thus Hoag Ranches does not apply, according to MCPCA. However, in addition to the 1985 amendments, Hoag Ranches recognized that:

> there are other factors which have always weighed against treating PCA's as agencies. PCA's are not referred to as agencies in either Title 12 or the legislative history, and they have no greater access to federal court than do other private corporations. When they do go to court, they are represented by private, rather than government, counsel. ... Finally, Federal Land Banks, which are comparable to PCA's in many ways, are not considered government agencies. Cotton, 410 F.Supp. at 171.

Hoag Ranches, slip op. at 5627-28. We are also convinced that even prior to 1985, PCA's were

8

> "privately organized, privately owned, and privately operated corporation[s], albeit federally chartered."

United States v. Haynes (M.D. Tenn. 1985), 620 F.Supp. 474, 477 (quoting Sparkman, 703 F.2d at 1102 n. 1 (Frye, J., dissenting)).

Moreover, the 1959 amendments to the Farm Credit Act removed federal ownership and control of the Farm Credit System. See Sterrett v. Milk River PCA (D. Mont. 1986), 647 F.Supp. 299, 302 (citing House Rep. No. 287, 86th Congress 1st, Sess. 1, reprinted in [1959] U.S. Code Cong. & Admin. News 2123). The lack of control, the most important factor in Lewis, existed when this claim arose, and it weighs heavily here for finding that MCPCA cannot claim agency status under the FTCA.

In addition to the authority provided by Lewis, this Court is reluctant to leave Tookes without access to court for pursuing their claims as guaranteed by the Montana Constitution, Article II, Section 16, which provides in part:

> Courts of justice shall be open to every person, and speedy remedy afforded for every injury of person, property, or character.

(Emphasis added). The constitutional guarantee under Section 16 mandates that the courts be "accessible to all persons alike, without discrimination, at the time or times and the place or places appointed for their sitting, . . ." Shea v. North-Butte Mining Co. (1919), 55 Mont. 522, 533, 179 P. 499, 501. Conflicting decisions of the Montana Federal District Courts and this Court deny Tookes a forum for their claim even though there is no issue presently that their claim is cognizable in some court. In the face of these rulings, we are loathe to deprive court access to plaintiffs in these

9

types of claims.  Thus, we reverse and remand for further proceedings consistent with our finding that PCA's may be sued outside the FTCA.

_R. C. McDonough_
Justice

We Concur:

_J. A. Turnage_
Chief Justice

_John Conway Harrison_

_Fred J. Weber_

_John C. Sheehy_

_L. C. Gulbrandson_

_William E. Hunt_
Justices

10